385 So.2d 33 (1980)
PARENT-COMMUNITY ALLIANCE FOR QUALITY EDUCATION, INC., the Greater New Orleans Louis A. Martinet Society, Inc., Nate Phipps, Carl Galmon, and Rev. Sylvester Lyle, Sr.
v.
The ORLEANS PARISH SCHOOL BOARD.
No. 11570.
Court of Appeal of Louisiana, Fourth Circuit.
June 4, 1980.
Writ Refused June 23, 1980.
*34 Lolis E. Elie, Okla Jones, II, Walter J. Wilkerson, New Orleans, for plaintiffs-appellants.
Polack, Rosenberg, Rittenberg & Endom, Franklin V. Endom, Jr. and Samuel I. Rosenberg, New Orleans, for defendant-appellee.
Durrett, Hardin, Hunter, Dameron & Fritchie, Emile C. Rolfs, III and Stephen H. Vogt, Baton Rouge, amicus curiae, Sigma Delta Chi.
Taylor, Porter, Brooks & Phillips, Frank M. Coates, Jr., Baton Rouge, amicus curiae, Capital City Press, Inc.
Jeff McHugh David, Denham Springs, Claire M. Goldsworthy, Baton Rouge, amicus curiae, Louisiana Press Association.
Before SAMUEL, SCHOTT and SARTAIN, JJ.
SAMUEL, Judge.
Plaintiffs filed this suit against the Orleans Parish School Board seeking declaratory and injunctive relief from the Board's alleged non-compliance with some of the provisions of R.S. 42:4.1 through 42:9 (the "Open Meeting Law") during the Board's proceedings to select a superintendent of the Orleans public schools. Following a full summary hearing on the merits there was judgment in favor of the defendant, dismissing plaintiffs' suit, and in favor of the defendant and against the plaintiffs in the sum of $5,000 as attorneys' fees. Plaintiffs have appealed.
With our permission, Louisiana Press Association, Inc., Capital City Press and Sigma Delta Chi, a journalist association, have filed briefs amicus curiae in support of the appellants. They appear to seek relief beyond that requested by appellants. However, our settled law is that when particular relief has not been requested, or particular questions have not been raised, by the litigants, such relief or questions may not be granted or determined at the *35 request of those allowed to appear as amicus curiae.[1]
The record reveals the following facts:
Since October, 1979, the Orleans Parish School Board has been looking for a superintendent of schools to replace the present superintendent whose contract expires on June 30, 1980.
At a formal public meeting held on November 12, 1979, the Board decided to request the assistance of the National School Boards Association to recommend experts in the field of selection of school superintendents. Dr. Carroll Johnson, a white male, and Dr. Edyth Gaines, a black female, the experts recommended by the Association, were retained through the Association. They met with the general public at two of the Board's regular public meetings and at a special public meeting held on a Saturday in order to give additional interested citizens an opportunity to convey to these consultants anything they thought to be of importance in establishing a profile for the new superintendent. Additionally, the school administration, the superintendent's staff and all others in the local system were invited and given the opportunity to discuss the vacancy with the consultants, and the Board itself told the consultants what they were looking for. Eventually, the suggestions, comments, recommendations and directions received from these multiple sources were compiled into a statement of criteria for the selection of a new superintendent.
The consultants advertised nationally in newspapers and professional magazines, a bulletin was sent to all members of the National School Boards Association and notices were posted in the local schools. In some instances consultants and members of the Board itself invited qualified persons to apply.
A total of 82 applications were received. These applicants were screened by the consultants, their credentials verified and numerous telephone conversations were initiated by the consultants in an effort to select those applicants best qualified to fit the profile or criteria.
During the course of the search, the Board interviewed four different applicants invited to meet with the Board at a local hotel, and at luncheon thereafter. At the recommendation of the experts, no decisions or discussions were made by the Board members regarding those interviewed. These meetings were solely for the purpose of meeting these candidates whose professional criteria made them highly eligible for the position.
At an open public meeting of the Board on March 31, 1980, a motion to recess and go into executive session was made for the purpose of receiving the consultants' final report and their list of six candidates for the superintendency who, in the judgment of the consultants, were best qualified for the vacancy.
At this executive session there was a discussion as to whether or not those candidates not named in the final slate should be notified. No vote was taken on the matter. Dr. Mack Spears, president of the Board, was of the opinion it was only fair to notify the other applicants in the event they might be considering other jobs. Another Board member commented there was a lot of local "politicking" and such a letter might get the "politicking employees" back to work. At least one member concluded such a letter could wait until a final selection was made, and the experts, originally of the opinion a letter should wait until a final determination, later concluded a letter should be sent at this time.
Shortly thereafter, on April 2, 1980, Dr. Spears wrote the following letter to all candidates not among the finalists named by the experts:
"The consultants to the Orleans Parish School Board have presented their final report. We were quite favorably impressed by the general caliber of those who were interested in the superintendency. Although we have not interviewed candidates and our selection process *36 has just started, in fairness, we must inform you that you were not selected by the consultants for the final slate.
"We appreciate your interest in the superintendency and your loyalty and the many contributions which you have made toward the betterment of the New Orleans Public Schools.
"We thank you for your willingness to allow the Board to consider you for the New Orleans superintendency. The consultants have advised that we had many superior candidates and that the screening was most difficult. We feel certain that the consultants may be willing to respond to any specific questions which you may have regarding your candidacy.
"Again, our thanks for your many services and our best wishes for your continued success.
 "Sincerely,
 "/s/Mack J. Spears"
When some local candidates concluded the Board was in violation of the Open Meeting Law of this state, resulting in their unfair exclusion, this law suit followed.
In this court appellants make five assignments of error. The first is that the trial court erred by not holding the appointment of a superintendent of schools to be an appointment to a public body, thereby prohibiting a discussion of such an appointment in executive session. They rely on the last proviso of R.S. 42:6.1 A (1), which portion of the statute reads:
"A. A public body may hold an executive session pursuant to R.S. 42:6 for one or more of the following reasons:
"(1) Discussion of the character, professional competence or physical or mental health of a person, provided that such person may require that such discussion be held at an open meeting, and provided that nothing in this Subsection shall permit an executive session for discussion of the appointment of a person to a public body." (Emphasis added)
Plaintiffs cite authority to the effect that a school board superintendent is a public officer, and attempt to reason that as such his appointment falls within the philosophy, if not the letter, of the quoted provision.
We disagree. The language relied upon by plaintiffs applies to the fulfillment by a public body of its constitutional and statutory duty to fill vacancies as they occur.
Article 6, Section 13 of the Louisiana Constitution of 1974 provides:
"(A) Vacancy; Appointment. Except as otherwise provided by this constitution, a vacancy in any local office filled by election wholly within the boundaries of a local governmental subdivision or a school district shall be filled by appointment by the particular governing authority of the local governmental subdivision or school district in which the vacancy occurs, until it is filled by election as provided by law.
"(B) Exception. This Section shall apply to each local governmental subdivision unless otherwise provided by its home rule charter or plan of government."
Likewise, R.S. 18:602 B, as amended, provides:
"B. When a vacancy occurs in the membership of a city or parish school board, the remaining members of the board shall appoint a person who meets the qualifications of the office to fill the vacancy."
These authorities place a duty upon a parish school board to make an appointment to fill a vacancy in its makeup within ten days. The proviso of R.S. 42:6.1 A (1) simply prohibits discussion in executive session of the appointment of a person to fill a vacancy, and has nothing to do with the appointment of a superintendent who is not a member of the school board.
It is thus obvious that the actions of the defendant Board in discussing qualifications of a potential superintendent in executive session is not prohibited. The Board was, in effect, merely discussing the hiring of an employee and not filling a vacancy in its membership.
Appellants next argue the defendant violated R.S. 42:6 by making a final and binding decision in its executive session meeting of March 31, 1980. Revised Statute 42:5 provides meetings of public boards *37 and government bodies be open to the public. Revised Statute 42:6 provides:
"A public body may hold executive sessions upon an affirmative vote, taken at an open meeting for which notice has been given pursuant to R.S. 42:7, of two-thirds of its constituent members present. An executive session shall be limited to matters allowed to be exempted from discussion at open meetings by R.S. 42:6.1; however, no final or binding action shall be taken during an executive session. The vote of each member on the question of holding such an executive session and the reason for holding such an executive session shall be recorded and entered into the minutes of the meeting. Nothing in this Section or R.S. 42:6.1 shall be construed to require that any meeting be closed to the public, nor shall any executive session be used as a subterfuge to defeat the purposes of R.S. 42:4.1 through R.S. 42:8.
"Amended by Acts 1976, No. 665, § 1; Acts 1977, No. 707, § 1; Acts 1979, No. 681, § 1." (Emphasis added)
At the March 31, 1980 executive session, the experts hired by the Board to interview and screen applicants to fill the superintendent's position presented their final report, by which they recommended all but six of the 82 applicants be eliminated from consideration. On April 2, a letter was sent to the remaining 76 informing them they had not been selected "for the final slate". That letter is quoted in full above.
Appellants contend this letter was the result or culmination of a final and binding decision taken by the Board in executive session and, as such, was a violation of the above quoted R.S. 42:6.
The April 2, 1980 letter was written by Dr. Mack J. Spears, president of the Board. However, the evidence clearly discloses this letter was the action of Dr. Spears alone, and did not represent the consensus or vote, formal or informal, of the Board. Dr. Spears testified that while some discussion was had at the March 31 meeting, no decision was reached on the question of whether or not such a letter should be sent, and he wrote the letter on his own initiative without the vote, recommendation, or consensus of the Board. It was Dr. Spears' intention to allow those applicants who were not among the six recommended to have knowledge of their status so that they could seek appointments or employment elsewhere without further delay, if they desired to do so. The testimony and remarks of other members of the Board corroborate Dr. Spears' testimony.
Moreover, Dr. Spears specified that writing the letter did not per se eliminate its recipients from consideration altogether. He indicated he wished to keep the Board's options open with regard to employment of the recipients of the letter in the event the Board did not choose any of the six recommended by the consultants or in the event those chosen did not accept the appointment.
Given the testimony and evidence as a whole, we conclude Dr. Spears' April 2 letter is not proof of a final or binding action taken at an executive meeting, but merely the ex parte action of one of its members. This is particularly true in view of the fact that the letter states the Board's selection process "has just started" and that the addressee was "not selected by the consultants for the final slate." (Emphasis ours.)
Next, appellants contend the trial court committed error by finding the single and multiple concurrent executive sessions of indefinite duration held by the Board did not violate the Open Meeting Law. Specifically, they argue it was improper for the Board to declare an executive session at its open special meeting of April 8, 1980 and then recess and go into executive session to discuss the competence of the individual candidates recommended to them by their consultants. To accomplish this, individual interviews were arranged for April 9, 11, 13, and 15. On each occasion, the Board, while still in executive session, interviewed a different applicant on each date. The record does not disclose that a final or binding action was taken during any of these sessions. On the contrary, the record establishes that, on the recommendation of their *38 consultants, the board members avoided discussing the relative merits of the persons interviewed.
In any event, we construe plaintiffs' argue to be based on the law as it existed prior to 1976. Before Act 665 of 1976, when recessing an open meeting to go into executive session a public body was obliged to announce the specified time the recess would end. This is no longer required. The law as amended simply requires an affirmative vote of two-thirds of the constituent members present at an open meeting, for which notice has been given, to authorize executive sessions.[2]
Consequently, we hold the Board's use of multiple executive sessions with no specific termination date was not in violation of the Open Meeting Law, but instead was authorized by R.S. 42:6. Moreover, the evidence shows the multiple executive sessions were used for a legitimate purpose, that is to interview in a one-on-one situation those applicants recommended to the Board by the advisors hired by it to screen and select applicants.
Plaintiffs' fourth complaint is that they were deprived of a sufficient opportunity to question Board members in order to determine if final or binding action was taken at other than open meetings. During his examination of those members, counsel for plaintiffs attempted to elicit testimony as to what was discussed at executive sessions, particularly at the meeting of March 31. In several instances defense objections were maintained and in maintaining a few of those objections the trial court stated such testimony was inadmissible because it involved what had been done at an executive session. This ruling was erroneous; only by ascertaining the content of such discussion could a determination be made as to whether the exemption of R.S. 42:6 A (1) was applicable.
However, we have carefully read the transcript of the testimony of the school board members and we find the trial judge, despite the statements mentioned above, did not in fact exclude pertinent testimony. To the contrary, with rare exceptions, plaintiffs' counsel was allowed to question the school board members regarding everything which had occurred at the executive sessions (as can be seen from the factual matters set forth herein, all of which were obtained from the testimony now being considered). The exceptions referred to were such matters as the names of the four applicants the Board had interviewed, which particular Board member or members had been in favor of, or opposed to, the sending of the April 2 letter, etc. None of those exceptions involved matters pertinent or material to the issues here. In addition, we note the trial judge's statements were made only after counsel's questioning had become overly repetitious.
We are satisfied that Dr. Spears took it upon himself without any vote, authority, or consensus from other members of the Board to send out the letter complained of to those applicants not named in the final list of those most qualified, so that they might make other arrangements, if any they might have. He described it as a kind and humane act, and we accept that explanation.
Plaintiffs also contend the general procedural employed by the Board violated the spirit, if not the letter, of the Open Meeting Law, as expressed in R.S. 42:4.1:
"It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy. Toward this end, the provisions of R.S. 42:4.1 through R.S. 42:10 shall be construed liberally."
Under the process employed by the Board the major part of the selection process would be performed outside of open meetings. Applications were treated as confidential, interviews and investigations were conducted only by the two consultants, and confidential background information was *39 gathered with no information, not even names, disclosed to the public or even to the Board. After the consultants' report was delivered to the Board, its members had separate luncheon meetings with each of four leading candidates so as to interview them in an informal setting, but the Board was still not disclosing the identity of the finalists or letting the public in on the interviews.
Hindsight being the greatest wisdom, some of these steps might have been conducted at open meetings without great difficulty. The need for holding all the applications in confidence was not established, and the final report could have been delivered at a public meeting.
On the other hand, some aspects of the necessary procedure hardly could have been handled at public meetings. For the Board to receive 82 applications, interview the applicants, conduct individual investigations and obtain supplemental information on the applicants, all at public meetings, would be impractical if not impossible. A screening process of this magnitude conducted by the Board at public meetings, even if at all possible, would be a colossal waste of time. Furthermore, R.S. 42:6.1, quoted above, permits discussion "of the character, professional competence, or physical or mental health of a person" in executive session.
Obviously, the screening selection process for a new superintendent required discussion of the character and professional competence of the applicants and the letter as well as the spirit of the law recognizes that frank discussion about an applicant could not be achieved unless it could be conducted in a private session.
In the final analysis it may be argued the Board could have found some ways in which to operate more openly, but their general procedure cannot be said to have constituted a violation of the law.
Finally, we do agree with appellants' fifth contention regarding the award of attorneys' fees. The trial judge gave these reasons for making that award:
"... The court does not grant that request (for attorneys' fees) because this lawsuit was frivolous, and without substantial justification."
R.S. 42:11(C) provides for attorney's fees against a plaintiff in an enforcement proceeding under the open meeting law only if the court finds that the proceeding was of a frivolous nature and was brought with no substantial justification. Thus, as no other authority for making the award has been cited to us, and as we know of none, on the basis of his finding (we also find this lawsuit was not frivolous), we conclude the trial judge was not authorized to award attorneys' fees under this section. Accordingly, we will delete that award from the judgment.
For the reasons assigned, the judgment appealed from is amended to delete the award of attorneys' fees. In all other respects the judgment is affirmed.
AMENDED AND AFFIRMED.
SARTAIN, Judge, concurring.
In addition to the views expressed in the foregoing opinion, I feel constrained to make further comments.
Initially, the Board is to be congratulated on the thoroughly professional manner in which it originated its election process to fill the office of Superintendent. Two obviously qualified consultants were engaged and extensive publication was made nationwide in an effort to obtain the best qualified person for the job.
I also agree that it is within the authority of the Board to permit the consultants to engage in a screening process and to express an opinion as to the four or six applicants they deem most qualified. But the screening process engaged in by the consultants and the participation in that process by the individual members of the Board are two entirely different matters.
I get the distinct impression from briefs and argument of counsel for the Board that it interprets R.S. 42:6.1 A (1), quoted in the main opinion, to encompass basically all but the final selection; that this is a personnel matter which necessarily includes the discussion of the "character, professional competence", *40 etc. of the applicants; and that its conduct to date falls within the purview of the exception to the open meeting law. Support for this view is found in the fact that the names of all of the applicants, including the four or six finalists, were known only to the consultants and the Board members. I personally do not view the section as being this broad in scope. The exception contained in this section, in my opinion, is to permit discussion of one's character, etc. in executive session where the details of that discussion would tend to demean the individual under consideration and public discussion of such information would serve no useful purpose.
In the instant matter preliminary interviews with most, if not all, of the finalists have already taken place. While there has been no discussion among the Board members as to the relative merits of the applicants and each member has endeavored not to form an opinion, the risk of an undisclosed consensus under the procedure followed thus far is apparent.
However conscientious the individual members of the Board may be the ultimate official action of the Board may prove to be only a formality. It may have selected a very capable superintendent only to have its action in doing so seriously contested under the penalty of invalidity. R.S. 42:11 A (4).
NOTES
[1] Dinet v. Orleans Dredging Co., La.App., 149 So. 126.
[2] R.S. 42:6.