Alicia MORALES, et al., Plaintiffs,

v.

James TURMAN, et al., Defendants-Appellants,

v.

AMERICAN ORTHOPSYCHIATRIC ASSOCIATION, et al., Amici Curiae-Appellees.

No. 86–2531.

United States Court of Appeals, Fifth Circuit.

July 6, 1987.
Rehearing Denied Aug. 5, 1987.

See also, D.C., 569 F.Supp. 332.

Javier P. Guajardo, Asst. Atty. Gen., Mary F. Keller, Exec. Asst. Atty. Gen., Austin, Tex., for defendants-appellants.

Herbert B. Newberg, Philadelphia, Pa., Norman Rosenberg, Director Mental Health Law Project, Wash. D.C., for American Ortho, et al.

Before CLARK, Chief Judge, POLITZ, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

James Turman and others appeal from the district court's award of over $300,-000.00 in attorney's fees and costs to the Mental Health Law Project, counsel for the American Orthopsychiatric Association, the American Psychological Association, the American Association on Mental Deficiency, the Child Welfare League, and the National Council on Crime and Deficiency collectively—who voluntarily participated as amici curiae in civil rights litigation chal-

lenging conditions at Texas Youth Council institutions. We reverse, finding no statutory or common law basis for the assessment of attorney's fees or costs against the State of Texas for the benefit of voluntary amici.

I

A

This attorney's fees dispute arises from a suit filed in February of 1971 on behalf of a class of minors incarcerated in Texas Youth Council institutions for delinquent juveniles. The named defendants were Dr. James A. Turman, executive director of TYC, the individual members of the TYC,[1] and various employees of the TYC who were responsible for the supervision and care of the juveniles. But because all defendants were sued in their official capacity, the suit was essentially against the State of Texas.

The class was represented by the Youth Law Center, a non-profit legal services organization providing representation to juveniles. Plaintiffs alleged that the conditions of confinement in TYC facilities denied their right under state law and the eighth amendment to be free of cruel and unusual punishment, and sought an injunction prohibiting future violations. The district court in 1971 preliminarily enjoined the TYC from denying the right of class members to consult with their attorneys. *Morales v. Turman*, 326 F.Supp. 677 (E.D. Tex.1971).

In 1972, Peter Sandman of the Youth Law Center invited representatives of the Mental Health Law Project, another non-profit legal services organization, to participate in the litigation as representatives of amici curiae. According to Sandman, he looked to the MHLP because it was expert in mental health.

The MHLP filed a motion for leave to participate as amici curiae in August of 1972 on behalf of the American Orthopsychiatric Association, the American Psychological Association and the American Asso-

1. The members of the TYC are appointed by the Governor of the State of Texas with the consent of the State Senate. Tex.Hum.Res.Code Ann. § 61.012(a) (Vernon 1980).

ciation on Mental Deficiency. The MHLP later filed a similar motion on behalf of the Child Welfare League of America and the National Council on Crime and Delinquency. Both motions stressed that the associations were expert in mental health or juvenile delinquency. Each association asked "to assist the Court by presenting the views of their experts as to the conditions and programs in the juvenile facilities involved in this case," and "to contribute the aid and expertise of their organizations to the Court's deliberations on this critical issue of the adequacy of rehabilitation within the Texas System." All five associations further noted that they would abide by whatever restrictions the court placed on their participation. The motions were not opposed and the district court granted them, stating that amici could participate in this lawsuit as fully and to the same extent as though they were actual parties in interest.

But while amici were given the access to the court enjoyed by the parties, at no time during the course of this litigation did any of the amici ask to intervene as a party, nor did amici's counsel ever represent the class—already determined to be adequately represented. Indeed, amici's counsel conceded that an assertion of standing by any of the associations would have been problematic. It appears that counsel for amici toured TYC facilities, located and interviewed amici's expert witnesses, attended without participating in the depositions taken by the parties, actually participated in the depositions of amici's witnesses, and prepared pretrial memoranda on behalf of amici. Amici's counsel also presented amici's witnesses at trial and cross-examined plaintiffs' and defendants' witnesses.

It also appears that amici cooperated with plaintiffs' counsel and counsel for the United States, which also participated in this litigation as amicus curiae, in devising pretrial and post-trial strategy; that immediately after the trial, the three pooled efforts to develop a motion for interim relief and to propose joint findings of fact to the district court. But amici's counsel never assumed the obligation of representing the plaintiff class, and was never asked to do so.

The district court granted interim relief, *Morales v. Turman*, 364 F.Supp. 166, 175–81 (E.D.Tex.1973), ultimately ordering all participants—plaintiffs, defendants, the United States and amici—to develop a proposal for class relief. *Morales v. Turman*, 383 F.Supp. 53, 126 (E.D.Tex.1974). We reversed, holding that a three-judge court was required to review the constitutionality of TYC practices, *Morales v. Turman*, 535 F.2d 864, 873 (5th Cir.1976), but that decision was overturned by the United States Supreme Court, *Morales v. Turman*, 430 U.S. 322, 324, 97 S.Ct. 1189, 1190, 51 L.Ed.2d 368 (1977). We then remanded the case to the district court for evidentiary hearings to determine the necessity of present injunctive relief.

In August of 1978, the parties and amici engaged in broad discovery and on-site inspections of the TYC facilities. Extensive settlement negotiations followed, but amici did not participate in the negotiations. On March 3, 1983, the parties submitted an agreement to the district court which conclusively resolved the claims of the class, including attorney's fees. The district court later ordered an inspection of the TYC facilities by court-appointed experts. After this inspection, the district court approved the settlement agreement, which provided for over $600,000.00 in attorney's fees and costs to plaintiffs' counsel, and entered final judgment on April 16, 1984. Plaintiffs agreed as a covenant of the settlement agreement to oppose any motion for attorney's fees amici brought.

**B**

While the settlement agreement was pending with the district court, amici filed a request for attorney's fees. Amici initially pressed only their entitlement to fees and not their amounts, since both amici and defendants agreed to negotiate the amount of any allowed fees. Amici alleged two bases for recovery: (1) § 1988 because of their counsel's role as "co-lead counsel" on behalf of plaintiffs, and (2) the district court's inherent power to award fees to

amici. All parties opposed this motion, although plaintiffs' counsel submitted an affidavit in support of amici's motion, noting the significant contributions amici made during the course of this litigation.

The district court recognized that amici "were not technically parties" but "[r]ather, they volunteered to appear as friends of the court." Nonetheless, it found amici entitled to attorney's fees on both common law and statutory grounds. The district court held that it had equitable power to award fees to amici under the doctrine of *Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835, 853 (D.C.Cir.1981), *cert. denied*, 455 U.S. 994, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982), because amici's services were "highly beneficial ... and defendants were properly considered the parties who made these services necessary." It also found recovery under § 1988 to be proper, not only because, as amici alleged, amici's counsel acted as "co-lead" counsel on behalf of the plaintiffs, but also on the basis that "amici fulfilled the role of a party in this litigation through indispensable and nonduplicative advocacy." The district court ruled that the prior settlement agreement between plaintiffs and defendants did not block amici's independent right to compensation, that this right could not be overturned by *other parties* in this litigation.

The defendants and amici later returned to the district court to determine the proper amount of fees, their negotiations having proved unsuccessful. The district court awarded amici $318,142.00 as attorney's fees and $20,849.78 as costs, awarding interest on the attorney's fee award only. The defendants appeal, attacking among other things both bases for the grant of attorney's fees. We treat first the common law basis for the award of fees, and then turn to § 1988.

## II

We doubt that this common law doctrine applies in suits under federal law. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975) (absent statute or enforceable contract, litigants pay their own attorney's fees). *Schneider* was a diversity case. But, we need not decide this issue, convinced that amici is not entitled to fees under the common law doctrine in any event.

■ Under the common law, two conditions must be met before a federal court may charge the legal fees of amici curiae to a party for services rendered to the court. First, "the court must '*appoint[ ]* an amicus curiae who renders services which prove beneficial to a solution of the questions presented.'" *Schneider*, 658 F.2d at 854 (emphasis added) (quoting 4 Am.Jur.2d *Amicus Curiae* § 7). Second, the court may then " 'direct [the fee] to be paid by the party responsible for the situation that prompted the court to make the appointment.'" *Id.* The district court found amici satisfied both conditions: amici's services "were highly beneficial ... and defendants were properly considered the parties who made these services necessary."

■ Amici were volunteers, however, not appointees. Their appointment was not sparked by the need for their aid. That is, the district court did not seek the aid of amici, but allowed them to participate at their request. *Cf. Schneider*, 658 F.2d at 839 (conflict of interest problems created by plaintiffs' counsel created the need for appointment of amicus). As such, they fail to satisfy the first condition and cannot receive compensation under the common law rule. *See Miller-Wohl Co. v. Commissioner of Labor & Industry*, 694 F.2d 203, 205 (9th Cir.1982).

Moreover, the district court provided no basis for its finding that "defendants were properly considered the parties who made these services necessary." If status alone as a defendant satisfies the second condition of the common law test, as the district court implies, the second condition is meaningless. We decline to so hold.

## III

Section 1988 provides: "in any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of

this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow *the prevailing party*, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Amici argue that the district court properly awarded fees under § 1988 because amici provided beneficial services to the plaintiff class and, alternatively, because amici participated as full litigating parties in this action.

A

■ The statutory language of § 1988 is unambiguous: "the court, in its discretion, may allow *the prevailing party* . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. And the legislative history makes clear that fees are to be limited to actual parties involved in the suit. *See* S.Rep. No. 94–1011, 94th Cong., 2d Sess. 1, 4–5 & n. 4, *reprinted in* 1976 U.S.Code Cong. & Admin. News 5908, 5912 & n. 4 (plaintiffs, the class, defendants, and defendants-intervenors may seek fees). Counsel for amici never purported to represent plaintiffs in this litigation, and were never asked to do so. Yet, the district court found that amici rendered beneficial services to the class and accordingly awarded fees.

The district court and amici rely upon *Tasby v. Estes*, 651 F.2d 287 (5th Cir.1981), and later cases following *Tasby* to establish the statutory entitlement to fees, claiming that provision of non-duplicative, beneficial services entitles counsel to attorney's fees. In *Tasby*, an attorney for the NAACP was retained by plaintiff's counsel to assist in plaintiffs' brief for the United States Supreme Court. The NAACP attorney wrote most of the brief. The district court later denied the claim for time that the NAACP attorney spent writing the brief because it felt that an additional attorney was unnecessary. We reversed, stating the work was not duplicative.

In *Tasby*, unlike our case, the lawyers represented a party. Here, amici's counsel never obligated itself to the class, or otherwise assumed the responsibility of representing the class. *See* Fed.R.Civ.P. 11, 23; *see also Alexander v. Hall*, 64 F.R.D. 152, 155 (D.S.C.1974) (as amici, the associations are not bound by an adverse judgment). Amici's counsel stepped in and out of the litigation, and did not even participate in the protracted settlement negotiations that resolved the controversy. We do not depreciate their purpose or service, but the fact that amici's counsel, while representing amici, rendered services beneficial to the class does not establish an entitlement to fees.

Likewise, the remaining cases cited by both the district court and amici involved counsel retained by a party. *See Johnson v. University College*, 706 F.2d 1205 (11th Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983); *Mitchell v. Johnston*, 701 F.2d 337 (5th Cir.1983); *Dowdell v. City of Apopka*, 698 F.2d 1181 (11th Cir.1983); *Smith v. Fussenich*, 487 F.Supp. 628 (D.Conn.1980). Only *Smith* involved compensation for services rendered outside of an attorney-client relationship. In that case, thirty hours of work as amicus was compensated because the attorney, after his initial work, actually became counsel of record to the plaintiffs. The district court found the thirty hours necessary to the representation of the plaintiffs, and awarded fees accordingly. None of these cases stand for the proposition asserted by amici and the district court below.

B

But amici argues, and the district court found, that amici participated in this litigation as full parties. This finding is clear error. Amici never intervened in this suit. This was no technicality or oversight. Amici's counsel conceded at oral argument that amici lacked standing to intervene had it attempted to do so. We are not persuaded that Congress intended that a party for purposes of § 1988 be a party other than in the ordinary sense of the federal rules.

Amici are not parties to the litigation. *Miller-Wohl Co.*, 694 F.2d at 204. Thus, amici are not entitled to fees under § 1988.

IV

We do not doubt the contribution of amici, but it does not follow that as volunteers they are entitled to be reimbursed for counsel fees by parties who neither sought nor caused the court to seek their aid. *See Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 581, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447 (1946).

In sum, amici voluntarily offered their services to the court. They never assumed the obligations and risks of representing the plaintiffs in this lawsuit. Nor did amici ever attempt to intervene. Accordingly, there is no basis for an award of fees to amici. The judgment of the district court is REVERSED.