UNITED STATES of America

v.

STATE OF LOUISIANA: Louisiana State Board of Education, Edward Bopp, as President of the Louisiana State Board of Education, Earl Ingram, as Acting Director of the Louisiana State Board of Education, Lewis Michot, as ex Officio Secretary of the Louisiana State Board of Education; Jesse Bankston, Frederick Eagan, Harvey Peltier, Robert Curry, W.E. Whetstone, Boyd Woodard, A.J. Roy, Charles Colbert, Richard D'Aquin, Enoch Nix, Members of the Louisiana State Board of Education; Louisiana Coordinating Council for Higher Education: William Arceneaux, as Executive Director of the Louisiana Coordinating Council for Higher Education, Jesse Bankston, W.J. Defelice, Mrs. Moise W. Dennery, Albert W. Dent, Ewell Eagan, Fred C. Frey, Eugene G. Gouaux, J.K. Haynes, Thomas James, Troy Middleton, Leonard W. Phillips, Joe D. Smith, Jr., A.L. Swanson, John Phistlethwaite, D.S. Young, Members of the Louisiana Coordinating Council for Higher Education; Louisiana State Board of Supervisors: Carlos G. Spaht, as Chairman of the Louisiana State Board of Supervisors, Edward W. Edwards, as ex Officio Member, William T. Brown, Jimmy H. Davis, Gordon E. Dore, Murphy J. Foster, A. Eglin McKeithen, Lewis H. Padgett, William S. Peck, James R. Peltier, Sargent Pitcher, John Sherrouse, Jr., James T. Staples, Oliver P. Stockwell, A.L. Swanson, Members of the Louisiana State Board of Supervisors; Loui-

---

siana Board of Regents: William Arceneaux, Jesse Bankston, Edward Bopp, William T. Brown, Charles Colbert, Robert Curry, Richard D'Aquin, Jimmy H. Davis, W.J. Defelice, Moise W. Dennery, Albert W. Dent, Gordon E. Dore, Ewell Eagan, Frederick Eagan, Murphy J. Foster, Fred C. Frey, Eugene G. Gouaux, J.K. Haynes, Thomas James, A. Eglin McKeithen, Troy Middleton, Enoch Nix, Lewis H. Padgett, William S. Peck, Harvey Peltier, James R. Peltier, Leonard W. Phillips, John Phistlethwaite, Sargent Pitcher, A.J. Roy, John Sherrouse, Jr., Joe D. Smith, Jr., Carlos Spaht, James T. Staples, Oliver P. Stockwell, A.L. Swanson, W.E. Whetstone, Boyd Woodard, D.S. Young, Members of the Louisiana Board of Regents.

Civ. A. Nos. 80–3300, 90–4109.

United States District Court,
E.D. Louisiana.

Oct. 30, 1990.

**610**

Opportunities Section, Civ. Rights Div., U.S. Dept. of Justice, Washington, D.C., P. Raymond Lamonica, U.S. Atty., Baton Rouge, La., for U.S.

W.S. McKenzie, Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for LSU Bd. of Sup'rs and its Members.

Kendall L. Vick, Paul A. Eckert, Asst. Atty. Gen., New Orleans, La., for all other State defendants.

Robert C. Williams, Baton Rouge, La., for NAACP.

Curtis A. Calloway, Baton Rouge, La., for Southern University Alumni Ass'n, its President Dr. George Merrick and Grambling College Alumni Ass'n, its President, W.O. Thompson.

M. Aubrey McCleary, Jr., McCollister, Belcher, McCleary & Fazio, Baton Rouge, La., for Southern Ass'n of Colleges & Schools Inc.

Henry N. Brown, Jr., Dist. Atty., Benton, La., for Bossier Parish School Bd.

Robert C. Williams, Baton Rouge, La., for Treavor Brown, et al., amicus.

Trevor G. Bryan, Vincent P. Blanson, William J. Jefferson, Jefferson, Bryan, Jupiter, Lewis & Blanson, New Orleans, La., for Southern University Bd. of Sup'rs.

Margaret E. Woodward, New Orleans, La., for Bd. of Regents of State of La.

Carla Calobrisi, Joseph J. Levin, Jr., Washington, D.C., for State of La.

Paul W. Murrill, Baton Rouge, La.

Frank E. Vandiver, Director, Master Institute for Defense Studies, Texas A & M University, College Station, Tex.

Franklyn Jenifer, President, Howard University, Washington, D.C.

Curtis A. Calloway, Baton Rouge, La., Thomas N. Todd, Chicago, Ill., for Grambling State University Alumni Ass'n.

W. Shelby McKenzie, Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for Bd. of Sup'rs of Louisiana State University.

John N. Kennedy, Sp. Counsel to the Governor, State of La., Baton Rouge, La., for Governor Buddy Roemer.

---

Donald L. Beckner, U.S. Atty., Baton Rouge, La., Howard L. Sribnick, Jay Heubert, Atty., U.S. Dept. of Justice, Washington, D.C., Franz R. Marshall, Educational

Robert A. Kutcher, Jan Marie Hayden, Bronfin, Heller, Steinberg & Berins, New Orleans, La., for State Bd. of Trustees.

Winston DeCuir, Asst. Atty. Gen., Dept. of Justice, Baton Rouge, La., for State of La. State Bd. of Elementary and Secondary Educ.

Paul R. Verkuil, Sp. Master, College of William & Mary, University Relations, Williamsburg, Va.

Max Nathan, Jr., Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, New Orleans, La., David Boies, New York City, for Counsel to Sp. Master.

James M. Weiss, Mary Ellen Roy, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Capital City Press, Times Picayune.

William J. Guste, Jr., Atty. Gen., Kenneth C. De Jean, Winston Riddick, David Sanders, New Orleans, La., for Atty. Gen. of the State of La.

William J. Guste, Jr., Atty. Gen. of Louisiana, Thomas S. Halligan, Asst. Atty. Gen., Paul R. Baier, Sp. Asst. Atty. Gen. (Louisiana), Louisiana Dept. of Justice, Baton Rouge, La., for State of La.

## OPINION AND ORDER ON THE REPRESENTATION OF THE STATE

CHARLES SCHWARTZ, Jr., District Judge.

This case is before the Court on the motion of the Attorney General of the State of Louisiana to Designate Counsel for the State and Withdraw Designation of Additional Counsel [Record Document No. (R.Doc.) 517A]. Civil Action No. 90–4109 is also before the Court on the motion of the Attorney General to remand to state court [R.Doc. 9]. The Attorney General seeks to prevent the Governor of the State of Louisiana, acting through Special Counsel John N. Kennedy and associates Joseph J. Levin, Jr. and Carla Calobrisi,[1] from appearing in these proceedings. For the following reasons, the Court DENIES both motions.

**1.** On October 16, 1990, the Court granted Carla Calobrisi's own motion to withdraw as co-coun-

## I.

In 1974, the United States filed this case, alleging that the State and other defendants were violating Title VI of the Civil Rights Act of 1964 and the Fourteenth Amendment to the Constitution of the United States. In 1981, the parties entered into a Consent Decree in an attempt to resolve the issues before the Court; by December 31, 1987, when the Consent Decree was to expire by its own terms, there was a volley of countering complaints that the State had not lived up to its obligations and that the Consent Decree was fiscally impossible to fully implement.

Because, in the final analysis, the Consent Decree presented an unworkable "band-aid" type solution to the enormous problems in Louisiana public higher education and because no party took any action to extend or substantially amend the decree before its expiration, the litigation returned to "square one," with all issues reopened. *See United States v. Louisiana*, 692 F.Supp. 642, 647–49 (E.D.La. 1988). Following several conferences, it was determined that the Court could resolve the case most expeditiously by addressing liability first and then, if any was found, to proceed with the time-consuming process of fashioning a remedy.

Accordingly, on May 13, 1988, the United States and one of the defendants filed cross-motions for summary judgment on liability. On June 6, 1988, Mr. Guste's Assistant Attorney General Winston DeCuir filed an opposition to that motion. *See* R.Doc. 249. On August 2, 1988, the Court found liability, *see United States v. Louisiana*, 692 F.Supp. at 653–58, and thereafter proceeded to address the issue of remedy. That June 6th paper was the last the Court heard from the Attorney General in any material respect, until after the case at the trial level was effectively concluded, as is detailed more fully below.

In January 1988, a new Governor, Charles E. "Buddy" Roemer III, took of-

sel herein. *See* R.Doc. 554.

fice. He had promised, among other things, a political agenda for reform of higher education. The Attorney General and others apparently briefed him on the lawsuit; to show that the new Governor was given notice of the State's defense and substantially agreed with its content, John N. Kennedy, the Governor's Special Counsel, co-signed the State's memorandum in opposition to the United States' summary judgment motion. *See* R.Doc. 249.

At that time, Mr. Kennedy was not enrolled as counsel in the case and did not actually participate in the State's defense nor in the preparation of the memorandum. Matters soon changed, however, when the case entered its remedy phase; the Governor, acting through Mr. Kennedy, took a highly active role in the case, including at almost all conferences in chambers with all counsel who desired to appear. The list of court appearances by Mr. Kennedy forms a stark contrast to the list of purported appearances of the Attorney General's staff, which, as indicated below, amounted to receiving mail and silently attending several status conferences.[2]

In November 1988, Joseph J. Levin, Jr. was also retained to represent the State with Mr. Guste's knowledge and explicit consent. Thereafter, on January 18, 1989, Assistant Attorney General DeCuir filed a motion formally requesting this Court to admit John N. Kennedy, Joseph J. Levin, Jr., and Carla Calobrisi (Mr. Levin's associate) as additional counsel to represent the State; the Court granted the motion and designated Mr. Kennedy as lead trial attorney, Mr. DeCuir as local attorney, and Mr. Levin and Ms. Calobrisi as additional counsel. *See* R.Doc. 319A.

Mr. Kennedy's participation in this case, which began in early 1988 and continues to this day, has included the submission of formal filings to the Court, as well as his active participation at hearings, status conferences, depositions, settlement conferences and negotiations, and similar related meetings. After he became involved in the case, Mr. Kennedy, along with Mr. Levin, took the lead in the State's representation, drafting documents, filing motions, conducting discovery, attending hearings, and presenting evidence on behalf of the State, all with the tacit approval of the Attorney General.

The period from August 1988 through July 1989 was the most active period in this litigation. Throughout this period, numerous hearings and court conferences were held, including proceedings before the Special Master on the issue of remedy. Yet the Attorney General's office took what may be generously described as a passive role. Assistant Attorney General DeCuir attended most of the conferences before the Court, but absolutely no filings were received nor was any active part taken by the Attorney General himself or his office. As the Attorney General's own submissions reveal, his office was included on the Court's mailing list and received copies of all papers filed by other attorneys. His attempt to classify as appearances before the Court the appearance of his office on mailing lists and certificates of service is, to say the least, misleading to a reader unfamiliar with this case. Such contentions highlight a focal problem in this case:

---

**2.** *Compare* R.Doc. 545, Exh. 1, at 2–6 *with* R.Doc. 547, Exh. A, at 8–16. In addition, the Court's workfiles reflect attendance by attorneys for the Governor and from the Attorney General's office at the following in-chamber conferences:

02/29/88 Mr. Kennedy and Mr. DeCuir
03/16/88 Mr. Mongrue, a member of the Attorney General's staff
03/29/88 Mr. Kennedy and Mr. DeCuir
08/24/88 Mr. Kennedy and Mr. Walker for the Governor and Mr. DeCuir and Ms. Benoit from the Attorney General's office
11/22/88 Mr. Kennedy and Mr. DeCuir; also, Governor Roemer
12/16/88 Mr. Kennedy, Mr. Levin, and Ms. Calobrisi for the Governor and Mr. Riddick from the Attorney General's office
01/25/89 Mr. Kennedy, Mr. Levin, and Ms. Calobrisi for the Governor and Mr. Riddick from the Attorney General's office
The Governor attended at least one other status conference before the Panel, but the Court is unable at this time to recall which one.
Notwithstanding the magnitude of this case and its potential impact on the future of education in Louisiana, Attorney General Guste made no personal appearance after the Consent Decree was signed in 1981 until after the proceedings on remedy were essentially over.

the Attorney General refused to do any more than sit idle, receive mail and then, on the eve of the finality of an order that would have largely completed the case at the District Court level, complain of the Court's refusal to rule as the Attorney General deemed appropriate.

On July 19, 1989, following innumerable hearings on the issue of remedy and the costly appointment of a Special Master, this Court issued its Opinion and Order on remedy. By then, termination of the case was long overdue, especially considering the time, effort, and taxpayer money expended and the Court's perception of certain parties' power-mongering to the detriment of equal educational opportunity. After the entry of this Remedial Order and just before the expiration of the period to request relief under Rule 59, Attorney General Guste emerged; to the Court's utter surprise and having never indicated that he espoused a position contrary to those he appointed to represent the State, he attempted an effective reversal of the State's position on remedy. Specifically, on August 2, 1989, *after* this Court had issued its Remedial Order and while Governor Roemer was out of the country, Mr. Guste filed a post-trial motion, entitled "Notice to Join in Motion of the Southern University Board of Supervisors for a New Trial and/or Motion to Alter or Amend Judgment." *See* R.Doc. 499.

Mr. Guste's challenge to the Remedial Order was both puzzling and surprising to most of the parties.[3] In his "notice to join," he designated Southern's counsel, State Senator William J. Jefferson, as counsel to represent the "particular interests of the Attorney General." Previously, throughout the litigation, Southern had

been an opponent of the State and the remaining defendants and had closely aligned itself with the plaintiff. Apparently realizing the blatant conflict of interest created by this designation, Mr. Guste moved the very next day to withdraw his appointment of Senator Jefferson and further to "enroll" himself and certain members of his staff as counsel for the State. *See* R.Doc. 508. Notwithstanding this withdrawal, however, he still gave notice that he joined Southern's motion. *See* R.Doc. 507.

The obscurity of Mr. Guste's contention on representation is best illustrated by his belated objection to the creation of a single governing board for public higher education in Louisiana to replace the current four boards. The single board was a principal remedy unceasingly and publicly promoted by the State through Mr. Kennedy and fully supported by the Board of Regents for the State of Louisiana ("Regents"), the Board of Trustees for Louisiana State Colleges and Universities ("Trustees"), and the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU"). Given Mr. Guste's contention that he actively participated in the proceedings during this period, and his own admissions that his assistants attended status conferences and his office received copies of all filings, Mr. Guste is certainly charged with knowledge of all submissions to the Court. Yet he made no objections to the actions taken on behalf of the State. Thus, it is difficult to understand Mr. Guste's current position that he did not consent to all actions taken by Mr. Kennedy before August 2, 1989.[4]

---

3. Southern, however, was not surprised. Not only did Southern know Mr. Guste was joining in its motion, but also Mr. Guste admitted that Senator Jefferson, counsel for Southern, prepared Mr. Guste's Notice to Join and actually filed the notice for Mr. Guste. *See* R.Doc. 545, Exhs. 1–2.

4. The following chronology of events unequivocally refutes the contention and inference that on August 2, 1989, Mr. Guste was suddenly surprised by the Court's adopting the Special Master's recommendation to create a single board.

4/18/89 Special Master's recommended report filed (*including a recommendation for a single board*). R.Doc. 432 (original date for filing objections was May 2, 1989).

5/01/89 to 5/16/89 Various objections to Special Master's report filed:

United States: R.Doc. 438.

State of Louisiana: R.Doc. 439 (*no objections to single board*) and R.Doc. 445 (response to objections raised by the United States and Southern).

Regents: R.Doc. 441.

Trustees: R.Doc. 436–437.

Mr. Guste's next step in attempting to reverse the State's position on remedy was to bring this case before the United States Supreme Court. On August 11, 1989, Mr. Guste filed a "Motion for Stay Addressed to Individual Justice." The only other party filing an application for a stay in the Supreme Court was Southern. Simultaneous with his motion for a stay, Mr. Guste filed a Notice of Appeal to the Supreme Court and, on August 16, 1989, asked that Court to remove Mr. Kennedy, Mr. Levin, and Ms. Calobrisi as counsel for the State. Thereafter, Mr. Guste filed his Jurisdictional Statement with the Supreme Court, purportedly on behalf of the State. A separate Jurisdictional Statement was filed jointly by the State through Governor Roemer and by Regents, Trustees, and LSU.

## II.

Against this background, the Court must to assess who will represent the State's interests in this case. The Court concludes that (1) under both federal statutory and inherent federal judicial authority, it is a federal question for this Court to determine and resolve the right and manner of counsel participation before this Court; (2) due to his active and tacit acquiescence in the Governor's involvement, the Attorney General is judicially estopped from complaining, and he waived any right he might have had to complain, of the Governor's representation of the State in this case; (3) under Louisiana state law, the Governor,

not the Attorney General, is the superior representative of the State's interests; and (4) alternatively, the Governor should be permitted to appear and participate as an amicus curiae.

## A.

■ As a federal court of competent jurisdiction over this case under the Civil Rights Act and the Constitution, this Court has both the federal statutory and inherent judicial power to resolve who may be permitted to appear before it and how appearances before it may be conducted. *Compare Frazier v. Heebe*, 482 U.S. 641, 645, 107 S.Ct. 2607, 2611, 96 L.Ed.2d 557 (1987) (citing 28 U.S.C. § 1654) *with Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1209 (11th Cir.1985) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–66, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 488 (1980)). Thus, neither state statutes nor state courts can be dispositive of any dispute over representation of a party in this federal court case. *See also Western Life Insurance Co. v. Nanney*, 296 F.Supp. 432, 440 (E.D.Tenn.1969).

■ Once counsel have been designated and authorized to appear before a court in any proceeding, it is hornbook law, common practice, and has been uniformly held that such court (with any reviewing appellate courts) alone has the right thereafter to determine counsel and to permit substitution or addition of counsel. Specifically, courts are granted broad discretion to de-

LSU: R.Doc. 440; R.Doc. 444 (response to objections raised by the United States and Southern).

Southern: R.Doc. 443 (objection to single board).

Grambling State University Alumni Association (GSUAA): R.Doc. 442.

5/30/89 Final report of Special Master (*including a recommendation for a single board*), R.Doc. 460.

6/01/89 Court ordered objections to Special Master's final report to be filed by June 12, 1989, R.Doc. 462.

6/12/89 to 6/23/89 Various objections to Special Master's final report filed:

United States: R.Doc. 469, 473.

State of Louisiana: R.Doc. 475 (*no objection filed to the creation of a single board*).

Trustees: R.Doc. 467.

LSU: R.Doc. 464–465.

Southern: R.Doc. 468 (objection to single board).

GSUAA: R.Doc. 466.

6/26/89 Hearing on objections to final report, R.Doc. 480.

7/19/89 Opinion and Order adopting the Special Master's final report, R.Doc. 490.

8/02/89 Attorney General Guste filed his "Notice to Join," R.Doc. 499.

Southern University, with whom the Attorney General is apparently now aligned, suggests as a reason for the Attorney General's lack of participation in these proceedings one that could at least be argued from the record (but one that he in fact does not argue), to wit: he was not concerned about remedy and was only interested in the liability phase of the case.

termine who shall practice before them in each particular case and to monitor their conduct. This is especially true when the conduct may directly impede the orderly administration of justice. *Norton v. Tallahassee Memorial Hospital,* 700 F.2d 617, 619–20 (11th Cir.1983); *United States v. Dinitz,* 538 F.2d 1214, 1219 (5th Cir.1976), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977); *see Kleiner,* 751 F.2d at 1209. At times, a defendant's right to counsel "must yield to the higher interest of the effective administration of the courts." *United States v. Kitchin,* 592 F.2d 900, 903 (5th Cir.), *cert. denied,* 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979).

If courts did not have this power, attorneys could manipulate the court's docket to suit their tactical advantage. For example, as in this case, on the eve of the finality of judgment, irrespective of all the judicial time and expense previously incurred, a party could, by removing counsel, attempt to thwart an expeditious resolution of the case.

■ The Court briefly addresses the Attorney General's conduct in filing on October 9, 1990, a suit in state court seeking to resolve by declaratory judgment the very same issues raised by the Attorney General's own motion before this Court in this very case. The Attorney General's state court suit has now been removed to this Court, assigned Civil Action No. 90–4109, transferred to this Section of Court, and consolidated with this case (Civil Action No. 80–3300). On October 24, 1990, the Attorney General filed a motion to remand, which the Court took under submission on the memoranda without oral argument.[5]

The Attorney General's thinly veiled attempt to deprive this Court of the jurisdiction to determine representation in this case must fail. *See also* 28 U.S.C. § 2283 ("A court of the United States may ... stay proceedings in a State court ... where necessary in aid of its jurisdiction"). Because federal law and *this* federal court control such issues notwithstanding the Attorney General's contrary suggestion, the Governor's removal of Civil Action No. 90–4109 was proper under 28 U.S.C. § 1441.

### B.

■ The Attorney General's own actions in this case show his acquiescence in the Governor's representation of the State. The Attorney General generally failed to take an active role in the remedy phase of the case. Instead, he permitted the Governor and his lawyers, each of whom Mr. Guste moved into the case as the State's counsel, to conduct the State's defense. Having never objected to the Governor's representation of the State, the Attorney General should not now be allowed in effect to alter the State's position at the eleventh hour, after, as set out heretofore, the case was, for all practical purposes, completed at the trial level.

Having brought the Governor's counsel into the case, Mr. Guste should not then be allowed to replace those attorneys and the Governor, particularly while attempting to change the position of the State by opposing those critical aspects of the Remedial Order that the State had advanced at trial. *See Brandon v. Interfirst Corp.,* 858 F.2d 266, 268 (5th Cir.1988); *Mongoose Gin Co. v. United States,* 331 F.2d 483, 484 (5th Cir.) (new allegations, not raised before the trial court, may not be asserted as a basis for reversal of the trial court's judgment), *cert. denied,* 379 U.S. 833, 85 S.Ct. 65, 13 L.Ed.2d 41 (1964); *Christian v. Jemison,* 303 F.2d 52, 55 (5th Cir.) (defendants' failure to contest allegations *"prior to judgment"* prevents them from doing so after judgment is rendered (emphasis in original)), *cert. denied,* 371 U.S. 920, 83 S.Ct. 287, 9 L.Ed.2d 229 (1962); *see also People ex rel. Deukmejian v. Brown,* 29 Cal.3d 150, 155–56, 172 Cal.Rptr. 478, 479–80, 624 P.2d 1206, 1207–08 (1981) ("no constitutional, statutory or ethical authority" existed to support the Attorney General for "acting adversely to the position of his statutory clients [the Governor and the state

---

5. Concurrent with his motion to remand, the Attorney General sought costs, expenses, attorneys' fees, and imposition of Rule 11 sanctions.

The Attorney General's motion for sanctions is baseless and utterly without merit.

agency]"). The equities against the Attorney General are especially compelling here where he offers no plausible explanation for his tardiness. *See Graddick v. Newman,* 453 U.S. 928, 936, 102 S.Ct. 4, 9, 69 L.Ed.2d 1025 (1981) (Powell, J., in chambers) (refusing to grant the Alabama Attorney General's request for a stay of a federal district court order, where the governor maintained a different position and the Attorney General "moved with unexplained tardiness"); *see also Williams v. McKeithen,* Civil Action No. 71–98–B, Order (M.D.La. July 20, 1990) (ruling that Governor Roemer, and not Attorney General Guste, is the sole representative of the State in that case, which concerns a long-standing constitutional challenge to the policy and practices of the State's prison system).

Serious inconsistencies in Mr. Guste's arguments further support this conclusion. For example, in pleadings filed with the Supreme Court, Mr. Guste defended his appeal of this Court's Remedial Order and his request for stay of that Order by claiming that he "did not and *could not reasonably expect* that the abolition of the four boards of higher education would become part of the remedial scheme actually ordered [by the trial court]." R.Doc. 545, at 11–12 (quoting Guste's Supersession Motion at 14) (emphasis added). This statement is misleading and could only be excused as a statement from someone who was not familiar with the conferences, the hearings before the Special Master, and the record generally. In 1988, this Court suggested on at least two occasions that a unified governing board was likely to be part of the remedy fashioned in this case. *See United States v. Louisiana,* 692 F.Supp. at 658; R.Doc. 295, Opinion and Order of Nov. 22, 1988. Since then, numerous documents have been filed in this case (and served on Mr. Guste) discussing the single board issue. *See* footnote 4 above. Additionally, overwhelming media attention was given to the proposed abolition of the four boards and the creation of a single board. All of these factors render Mr. Guste's assertions all the more incredible and highlight the propriety of estopping Mr. Guste from complaining of the Governor's representation of the State.

Further, Mr. Guste's explanation to the United States Supreme Court for his belated re-involvement in the case is inconsistent with the explanation he offered to this Court, namely, that he was duty-bound to provide a defense of the State's four board, 70–member governance structure, and the laws creating it. *See* R.Doc. 499, 507. Certainly, to the extent such a duty was present, it has existed since the beginning of the remedy phase of this case, months before Mr. Guste chose to re-enter the case.

This State's Rules of Professional Conduct require candor in an attorney's professional conduct. *See* LOUISIANA RULES OF PROFESSIONAL CONDUCT, RULES 3.3, 4.1, 8.4. The Local Rules of this Court adopt these State rules and provide that this Court may take appropriate action for, among other things, violations of the Louisiana Rules of Professional Conduct. *See* RULES OF DISCIPLINARY ENFORCEMENT OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA, RULE II. Rule II could thus arguably serve as the basis for the Court's ordering of Mr. Guste's withdrawal from this case based on a willful violation of such rule. At a minimum, such conduct forms a basis for holding that Mr. Guste is estopped from complaining of the Governor's representation of the State's interests.

■ Under 28 U.S.C. § 1654, a party in federal court is not permitted "hybrid representation," partly by counsel and partly by himself. *United States v. Daniels,* 572 F.2d 535, 540 (5th Cir.1978). By analogy, a party in federal court is not entitled to divergent counsel. Because the Court on the one hand holds that the Governor's attorneys may continue to represent the State and on the other hand finds that the Attorney General is at odds with the Governor in this case, an additional basis follows for holding that the Attorney General must discontinue to represent the State in this case.

## C.

■ Even if this Court were to find that the Attorney General had not waived his rights herein as a matter of federal law, the Court would conclude that as a matter of Louisiana state law, the Governor, as head of the executive branch, is the primary representative of the State herein and, as such, may dictate the State's course in this litigation. *Cf. State of Louisiana ex rel. Guste v. Texaco, Inc.*, 433 So.2d 756 (La.App. 1st Cir.1983) (upholding the Governor's interpretation of a state statute over the Attorney General's in a dispute between the State and a third-party), *appeal dismissed*, 453 So.2d 557 (La.1984). This conclusion is based upon the 1974 Louisiana Constitution's clear designation of the Attorney General as a member of the executive branch of the government and, as such, an executive officer inferior to the Governor.[6] *Accord Graddick*, 453 U.S. at 934, 102 S.Ct. at 8.[7]

The recognition of the Governor's superior position is consistent with Louisiana case law under prior State constitutions:

> The Louisiana Supreme Court on frequent occasions has construed Article VII, Section 56 [the Attorney General Clause under the 1921 Constitution], as not conferring an exclusive charge and control of all legal matters in which the state has an interest in favor of the Attorney General.

*State of Louisiana ex rel. Guste v. Louisiana Bd. of Highways*, 275 So.2d 207, 213

6. Were the issue of representation in *this* Court solely a question of state law and were the state law not so clear, then *Burford* abstention by this Court might be appropriate. *Cf. also Massachusetts v. Feeney*, 429 U.S. 66, 97 S.Ct. 345, 50 L.Ed.2d 224 (1976) (certifying an similar but unclear issue to the Massachusetts Supreme Judicial Court). But neither condition is true in this case; thus, the Attorney General's reference to *Burford* is misplaced.

7. In this regard, the instant case is virtually indistinguishable from *Graddick*. Governor Roemer has actively participated in the litigation as the representative of the State of Louisiana and all of its citizens, while the Attorney General has been noticeably inactive until most recently. Additionally, in Alabama, as in Louisiana, the attorney general is the state's chief legal officer under state law. *Compare* Ala.

(La.App. 1st Cir.1973), *aff'd*, 289 So.2d 82 (La.1974);[8] *see also Kemp v. Stanley*, 204 La. 110, 15 So.2d 1, 9 (1943); *Ricks v. Department of State Civil Service*, 200 La. 341, 8 So.2d 49, 59–60 (1942); *State ex rel. Strauss v. Dubuclet*, 25 La.Ann. 161 (1873).

Section 8, pertaining to the Attorney General and naming him "the chief legal officer of the state," was placed in Article IV of the 1974 Louisiana Constitution, on the executive branch of state government, rather than in Article V, on the judicial branch. Article IV, Section 5(A) designates the Governor as "the *chief* executive officer of the state" (emphasis added). Read in context, these sections provide that the Attorney General is an executive officer operating under the Governor. Thus, the Attorney General does not replace the Governor as spokesman for the State whenever the Attorney General attempts to enter a legal proceeding.

The history behind Section 8 confirms that its placement in the executive powers article was purposeful and has meaning. During the constitutional convention debate on the executive branch article, it was suggested that even the introductory reference in Article IV, Section 8 to the Department of Justice and the Attorney General should be deleted and that all matters concerning both should be handled in Article V, on the judicial branch of the state government. *See* VI RECORDS OF THE LOUISIANA CONSTITUTIONAL CONVENTION OF 1973,

Code § 36–15–21 (1975) *with* La. Const. art. IV, § 8 (1974) *and* La.R.S. 49:21–:22; *see also* La. Const. art. VIII, §§ 5–7 (1974); La.R.S. 17:1453, 17:1831.

8. The Louisiana Constitution of 1921 contained the following language regarding the powers of the State's Attorney General:

> ... They, or one of them [the Attorney General and his assistants], shall attend to, and have charge of all legal matters in which the State has an interest, or to which the State is a party, with power and authority to institute and prosecute or to intervene in any and all suits or other proceedings, civil or criminal, as they may deem necessary for the assertion or protection of the rights and interests of the State. ...

La. Const. art. VII, § 56 (1921).

CONVENTION TRANSCRIPTS [hereinafter "RECORDS-TRANSCRIPTS"], at 625–26, *reproduced in* R.Doc. 545, Exh. 11. The decision not to do that, plus the later transfer of the provisions on the powers of the Attorney General to the executive branch article, supports the conclusion that the Attorney General is and was meant to be part of the executive branch, which is headed by the Governor. The Attorney General *could* have been made a part of the judiciary, which is independent of the executive branch; in response to that suggestion, however, then-delegate Camille Gravel[9] stated quite clearly:

> No sir. I think that most of us agree that the Attorney General should be in the executive branch of government. In the previous discussion on that ..., I believe the desire of this convention was to consider the functions of the Attorney General's office under the judiciary article but generally with an understanding that probably those functions would then be placed back in the executive article where we will have created, if this amendment passes, the department of justice within the executive branch.

VI RECORDS-TRANSCRIPTS, at 626.

Another member of the Executive Committee, delegate (now U.S. District Judge) Tom Stagg, was even more candid. In alluding to the powers of the Attorney General, Judge Stagg stated that the Executive Committee

> debated what ought to be the powers that would adhere to that office for him effectively to be able to be the state's chief legal officer, to guard the rights of all of the people of the state, *without having [sic] him so much authority that he might become more than just the state's chief legal officer.*

VI RECORDS-TRANSCRIPTS, at 880 (emphasis added).

The phrase "chief legal officer" first appeared in the proposal submitted to the convention by the Committee on the Executive Branch ("Executive Committee"), which was charged with the responsibility of drafting the 1974 constitution's provisions on the executive branch of the Louisiana state government. *See* 1 RECORDS OF THE LOUISIANA CONSTITUTIONAL CONVENTION OF 1973, JOURNAL OF PROCEEDINGS [hereinafter "RECORDS-JOURNAL"] 95, *reproduced in* R.Doc. 545, Exh. 9; Hargrave, *The Judiciary Article of the Louisiana Constitution of 1974*, 37 LA.L.REV. 765, 834 (1977), *reproduced in* R.Doc. 545, Exh. 10. The Executive Committee's comments to its proposal simply stated without further explanation that "[t]he attorney general is made the state's 'chief legal officer.'" *See* 1 RECORDS-JOURNAL, at 95; *see also* Hargrave, at 934 n. 306. The convention's Judiciary Committee also proposed a section to govern the Attorney General; that proposal did not contain the "chief legal officer" language, but instead merely used the language of the prior constitution. *See* 1 RECORDS-JOURNAL, at 100.

The Executive Committee's proposal concerning the Attorney General reached the convention floor before the proposal of the Judiciary Committee, since the Executive Committee's proposals were part of the overall provisions on the executive branch. However, to avoid protracted debate, part of which involved the proper jurisdiction of the committees, the convention voted to delay consideration of the powers of the Attorney General. *See* VI RECORDS-TRANSCRIPTS, at 624–26; *see also* Hargrave, at 831. Mr. Gravel, a member of the Executive Committee, proposed an amendment that deleted the Executive Committee proposal's reference to the Attorney General's powers and instead simply provided that "[t]here shall be a department of justice, headed by the attorney general who shall be the state's chief legal officer." Explaining his proposal, Mr. Gravel stated:

> [A]ll that this does is to create the department of justice within the executive department and to constitutionally declare that the Attorney General shall be the head of that department and the state's chief legal officer. *All of the matters relating to the functions, pow-*

---

9. Mr. Gravel had been executive counsel to the former Governor, was a top advisor to the Governor at the time, and worked with the then (and now) Attorney General Guste.

*ers and duties of the department and of the office of Attorney General will be relegated to future consideration when we consider the judiciary article.*

VI RECORDS-TRANSCRIPTS, at 625 (emphasis added); *see* Hargrave, at 821 n. 292.

The reference to "chief legal officer" thus remained, but, as the comment from Mr. Gravel indicates, only as an introductory expression without substantive meaning with regard to powers, functions or duties. The "chief legal officer" language, which is now the first paragraph of Section 8, merely establishes the department of justice and the fact that its head, *i.e.*, "the chief legal officer of the state," is the Attorney General. The specifics of the Attorney General's powers were to be (and were in fact) handled later when the Judiciary Committee's proposal was considered.

Once the consideration of the powers of the Attorney General was completed upon debate of the Judiciary Committee's proposal, the introductory paragraph in Article IV, Section 8 containing the "chief legal officer" language was followed by two specific categories of powers in two specific paragraphs. The first such paragraph (the second paragraph in Section 8) specifies the constitutional powers granted to the Attorney General and also limits those specified powers. The second such paragraph (the third paragraph in Section 8) leaves to the Legislature (and to other constitutional provisions) the determination of the "other powers" and "other duties" of the office. *See* IX RECORDS-TRANSCRIPTS, at 3377–81; Hargrave, at 831. None of those provisions requires this Court to allow Mr. Guste's position to predominate over the Governor's.

In sum, the state constitution's designation of the Attorney General as "the chief legal officer of the state" must be read in conjunction with its designation of the Governor as "the chief executive officer of the state" with authority over all other executive officers, including the Attorney General.[10] The issue is who establishes policy for the State in this litigation, not who is the real client, as Mr. Guste would have the Court frame the issue. In sum, the language in the constitution regarding the State's Attorney General confers no substantive or overall supervisory power on that office, as Mr. Guste would claim.

■ To supersede an attorney for the State, as Mr. Guste has attempted to do before this Court as well as the United States Supreme Court, the Attorney General must establish "cause." La. Const. art. IV, § 8.[11] The drafters of Louisiana's current constitution discussed the meaning of "cause." The records of the constitutional convention are replete with references to the need for some kind of misconduct or failure to act in order to justify the supersession. *See* VI RECORDS-TRANSCRIPTS, at 902–14; *see also* Hargrave, at 835–36. "Cause" in essence means that the attorney "is not fulfilling his duties satisfactorily." Hargrave, at 835; *Plaquemines Parish Commission Council v. Perez*, 379 So.2d 1373, 1377 (La.1980). There is absolutely no basis in the record before the Court for a finding that the Governor's counsel have failed to perform their duties properly or have failed to properly research the law.[12] Rather, their work has been of consistently high caliber. Thus, the Court perceives the local dispute as one of power, to shape policy regarding an appropriate remedy. In summary, the Court must re-

---

**10.** Article IV, Section 1(A) of the 1974 Constitution was also amended to list the Attorney General as the member of the executive branch, although the Attorney General had been omitted at one point. Article IV, Section 1(A) provides that "[t]he executive branch shall consist of the governor, lieutenant governor, secretary of state, attorney general, treasurer, commissioner of agriculture, commissioner of insurance, and all other executive officers, agencies, and instrumentalities of the state." La. Const. art. IV, § 1(A).

**11.** Section 8 provides in pertinent part that "the attorney general shall have authority ... for cause, when *authorized by the court which would have original jurisdiction* and subject to judicial review, ... to supersede any attorney representing the state in any civil ... action" (emphasis added).

**12.** Indeed, in his letters of "dismissal" directed to Mr. Kennedy, Mr. Levin, and Ms. Calobrisi, Mr. Guste commended their performance. *See* R.Doc. 545, Exh. 14.

ject as lacking in legal support Mr. Guste's efforts to have his choices predominate over those of the Governor.

### D.

■ A federal district court possesses the inherent authority to appoint an amicus curiae to assist the court in its proceedings. *United States v. Michigan*, 116 F.R.D. 655, 660 (W.D.Mich.1987); *cf. Morales v. Turman*, 820 F.2d 728, 731 (5th Cir.1987). The privilege of being heard amicus rests solely within the discretion of the court. *Leigh v. Engle*, 535 F.Supp. 418, 420 (N.D.Ill.1982); *accord U.S.F. & G. Co. v. Victory Land Co.*, 410 So.2d 359, 361 (La.App. 4th Cir.), *writ denied*, 412 So.2d 1113 (La.1982); *Parent–Community Alliance for Quality Education, Inc. v. Orleans Parish School Bd.*, 385 So.2d 33, 34 (La.App. 4th Cir.), *writ denied*, 386 So.2d 1379 (La.1980). Generally, courts have exercised great liberality in permitting an amicus curiae to file a brief in a pending case, and, with further permission of the court, to argue the case and introduce evidence. *Michigan*, 116 F.R.D. at 660–61; *cf. Morales*, 820 F.2d at 731. There are no strict prerequisites that must be established prior to qualifying for amicus status; an individual seeking to appear as amicus must merely make a showing that his participation is useful to or otherwise desirable by the court. *Leigh*, 535 F.Supp. at 420; *cf. New England Patriots Football Club, Inc. v. University of Colorado*, 592 F.2d 1196, 1198 n. 3 (1st Cir. 1979). Absent a statute to the contrary, no distinction is made between the request of a private person for leave to appear amicus and one by an agent of the government. *Leigh*, 535 F.Supp. at 420; *see Braddy v. Southern Bell Telephone & Telegraph Co.*, 458 F.2d 666, 668 (5th Cir.1972).

■ That the Governor's continued involvement in this case would prove useful to the Court and the State of Louisiana is an understatement. Throughout this litigation, Governor Roemer has actively and consistently participated as the representative of the State and its citizens. In contrast, the Attorney General has been passive and inconsistent, to the point of being disrespectful of this Court's jurisdiction through his effort to litigate these issues in state court in an attempt to circumvent this Court's inherent power to supervise the appearances of attorneys.

Louisiana's system of public higher education and all of its colleges and universities are at stake. Included in the powers conferred upon the Governor as the State's chief executive officer is the responsibility to appoint the members of the various bodies charged with the management of the State's public higher education system, a duty that is at the very core of this case. *See, e.g.*, La. Const. art. VIII, §§ 5–7; La. R.S. 17:1453, 17:1831–:1832, 17:1851–:1852, 17:3121–:3122. In addition to the duties and powers conferred by the State's constitution and statutes, the Remedial Order vests the Governor with the responsibility and authority to appoint the voting members of the single state governing board mandated in the Remedial Order. Thus, the Governor clearly possesses substantial legal interests and powers deserving of protection in the remaining stages of this case. Therefore, even if an appellate court were to rule that the Governor through his counsel may not represent the State in this case, this Court would permit the Governor to appear as an amicus curiae.

■ While the basis for permitting the Attorney General to remain in this case is slim, the Court nonetheless holds that he may participate in this case hereinafter as an amicus curiae, just like GSUAA.

### III.

For these reasons, the Court holds that John N. Kennedy and Joseph J. Levin Jr. are designated the State's sole attorneys in this case and that the Attorney General may participate as an amicus curiae only.

The issuance of this Order necessarily determines the entirety of the Attorney General's declaratory judgment suit; thus, the Court now DENIES all relief in that suit. Nothing herein, however, shall be construed to prevent the Attorney General from litigating his right to appear as a

representative of the State in a matter not involving these proceedings.[13]

The Clerk of Court is directed to enter a Judgment in accordance herewith.

---

**13.** Although the Attorney General uses broad language in his supporting memoranda, his complaint in his Petition for Declaratory Judgment and Injunction Relief is the conduct of Governor Roemer, John N. Kennedy, Joseph J. Levin, Jr., and Carla Calobrisi *solely* in connection with this case. To the extent the Attorney General would seek to adjudicate the issue of representation in future possible actions, his request would not yet present a justiciable case or controversy; thus, to any such extent, his declaratory judgment suit would be dismissed as premature.