**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Loran L. TAYLOR, Defendant-Appellant.**

**No. 77–1013.**

United States Court of Appeals, Seventh Circuit.

Argued June 15, 1977.

Decided Jan. 20, 1978.

Rehearing and Rehearing En Banc Denied Feb. 24, 1978.

Certiorari Denied April 3, 1978. See 98 S.Ct. 1581.

2.   See sec. 6212, Internal Revenue Code of 1954.

Loran L. Taylor, South Bend, Ind., for defendant-appellant.

Kennard P. Foster, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before FAIRCHILD, Chief Circuit Judge, and PELL and BAUER, Circuit Judges.

BAUER, Circuit Judge.

Following a jury trial, defendant-appellant Taylor was convicted of twelve counts of federal tax evasion under 26 U.S.C. §§ 7202–03 on the basis of evidence showing that he failed to file personal income tax returns and to truthfully account for money withheld from his employee's wages for payment of Social Security taxes. On appeal, Taylor contends that the evidence was insufficient to support his convictions, and that the district judge erred by not disqualifying himself from presiding over the trial, by not dismissing the indictment on the ground that Taylor had not been timely arraigned, by denying Taylor's request that he be represented by unlicensed counsel, by permitting standby counsel to participate in the trial over Taylor's objection, by informing the jury that Taylor had asked to be represented by a disbarred attorney, and by not allowing Taylor to address the jury to refute allegedly prejudicial publicity printed in the course of the trial. We find none of Taylor's claims meritorious and affirm his convictions for the reasons noted below.

## I.

With respect to Taylor's contention that the evidence presented at trial was insufficient to support his convictions, extensive discussion is unwarranted. Suffice it to say that Taylor's argument is frivolous, and that the evidence of his guilt is not only sufficient, but overwhelming when viewed in the light most favorable to the Government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

## II.

Taylor's next contention—that the district judge should have disqualified him-

self for bias because he was named as a party defendant to an antitrust suit brought by Taylor against the American Bar Association and virtually every federal judge in the nation—is likewise without merit and deserves little comment. We hold that, for the reasons noted in *United States v. Corrigan*, 401 F.Supp. 795, 797–98 (D.Wyo.1975), the district court correctly ruled that the conclusory allegations of bias contained in Taylor's affidavit of prejudice presented no legally sufficient basis for recusal under 28 U.S.C. § 144.

### III.

Taylor's next argument—that the district court erred in refusing to dismiss his indictment on the ground that he had not been timely arraigned—merits only slightly more expansive treatment. Noting that he was arrested and taken before a United States Magistrate for admission to bail on July 29, 1976, but not arraigned until August 19, 1976, Taylor claims that the Government violated the ten-day time limit specified in the Speedy Trial Act for arraigning defendants charged by means of an information or indictment. According to Taylor, the mere fact that his arraignment occurred more than 10 days after his appearance before a United States Magistrate constituted a violation of the Act, which provides in relevant part:

> "The arraignment of a defendant charged in an information or indictment . . . shall be held within ten days from the filing date . . . of the information or indictment, or from the date the defendant has been ordered held to answer and has appeared before a judicial officer of the court in which such charge is pending whichever date last occurs." 18 U.S.C.A. § 3161(c) (Cum. Supp.1977).

What Taylor's argument mistakenly assumes is that his appearance before the United States Magistrate at South Bend, Indiana for admission to bail triggered the running of the ten-day arraignment limit. Such was not the case for the indictment was pending in the United States District Court for the Southern District of Indiana, not in the Northern District which encompasses South Bend, the site of his arrest. As is clear from the face of the statute, the time limit for arraigning Taylor did not begin to run until he had been ordered held to answer "and ha[d] appeared before a judicial officer of the court *in which [the] charge [was] pending*." 18 U.S.C.A. § 3161(c) (Cum.Supp.1977) (emphasis added). Taylor's actual arraignment before Judge Noland of the United States District Court for the Southern District of Indiana was his first appearance before any judicial officer of that court. Accordingly, his arraignment was held within the time limit imposed by the statute.

### IV.

We turn now to Taylor's principal claims on appeal, namely, alleged infringements of his constitutional rights under the Sixth Amendment. Taylor's first claim is that the Sixth Amendment entitled him to choose as his counsel one Jerome Daly, a person unlicensed to practice law. Taylor contends that the district court erred in holding that he was not entitled to unlicensed counsel and in denying Daly leave to represent him at trial. The second of Taylor's Sixth Amendment claims is an alleged violation of his right to self-representation as enunciated in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). According to Taylor, once he had been denied Daly's assistance and had elected to defend himself at trial, it was error for the district court to permit a licensed attorney appointed as standby counsel to participate in the trial over Taylor's objection.

In support of his first contention that the Sixth Amendment's guarantee of the assistance of counsel includes the right to representation by persons not licensed to practice law, Taylor relies largely on some dictum from *Faretta* indicating that it was not an uncommon practice for colonial defendants to be represented at trial by personal friends who had received no formal training in the law. See 422 U.S. at 820

n.16, 95 S.Ct. 2525. Taylor draws from the history of lay representation and the deep-seated colonial distrust of lawyers noted in *Faretta* the conclusion that the Founding Fathers must have deliberately employed the generic term "counsel" in the Sixth Amendment in order to encompass persons not licensed to practice law. In any event, says Taylor, Daly had received legal training and, notwithstanding the fact that he was disbarred from the practice of law in Minnesota,[1] was qualified to represent Taylor at trial. Accordingly, Taylor concludes that the district court erred in refusing him Daly's assistance on the ground that Daly was not licensed to practice law in any State, as required by Rule 1 of the Local Rules of the United States District Court for the Southern District of Indiana. We disagree.

Although we are not unmoved by the sincerity of Taylor's plea for help of his friend, we cannot agree that, in guaranteeing criminal defendants the right to the assistance of "counsel" for their defense, the Sixth Amendment creates a constitutional right to representation by persons unlicensed to practice law. As we have indicated in an earlier opinion, Taylor's reliance on *Faretta* is simply misplaced. That case "does not hold that a defendant has the freedom of choice to select a nonlicensed person as his counsel" but merely that a defendant has "a constitutional right to represent himself and . . . proceed without counsel." *United States v. Peterson*, 550 F.2d 379, 381–82 (7th Cir. 1977). Moreover, Taylor's historical and linguistic analysis has been repudiated by every court that has considered the issue of whether the right to the assistance of "counsel" includes the right to representation by persons unlicensed to practice law. E. g., *United States v. Grismore*, 546 F.2d 844, 847 (10th Cir. 1976); *United States v. Whitesel*, 543 F.2d 1176, 1177–81 (6th Cir. 1976); *United States v. Kelley*, 539 F.2d 1199, 1201–03 (9th Cir. 1976); *Turner v. ABA*, 407 F.Supp. 451, 477–78 (E.D.Tex.1975). Indeed, the question is so well settled by now that further discussion seems to us fruitless. We reiterate our prior holding in *United States v. Jordan*, 508 F.2d 750, 753 (7th Cir. 1975), that Taylor was not constitutionally entitled to the assistance of unlicensed counsel and that the district court committed no error in refusing the request that Daly be allowed to represent Taylor at trial.

More extensive discussion is necessary for the second of Taylor's Sixth Amendment claims, namely, that the district court infringed Taylor's right of self-representation by permitting counsel appointed by the court to participate in the trial over Taylor's objection.

The facts underlying Taylor's claim are as follows: Following the court's pretrial ruling that Daly would not be allowed to represent Taylor at trial, the court inquired of Taylor whether he intended to retain duly licensed counsel or wished to have the court appoint an attorney to act on his behalf. Taylor responded that, although he felt unqualified to represent himself in the proceedings, he had no intention of securing licensed counsel and did not request that counsel be appointed for him. After determining that Taylor was validly waiving his right to the assistance of counsel and asserting his right to represent himself, the court then ruled that, in view of Taylor's statement that he believed himself unqualified to defend himself at trial, counsel would be appointed to serve as an adviser to the defendant and charged with the additional responsibility of seeing to it that all of the facts favorable to the defendant would be brought out at trial. Accordingly, standby counsel was appointed over the defendant's objection that the court had no right to force an attorney upon him in view of his right to represent himself under *Faretta*.

On the morning of the first day of trial, Taylor renewed his request that Daly be allowed to represent him and reiterated his

---

1. For a statement of the grounds for Daly's disbarment, see *In re Daly*, 291 Minn. 488, 189 N.W.2d 176 (1971).

objection to the court's appointment of counsel. The court restated its position that the Sixth Amendment gave Taylor no right to representation by unlicensed counsel and then inquired whether Taylor intended to present an opening statement or cross-examine any of the Government's witnesses. Taylor replied that he was not qualified to do that but "neither do I want [standby counsel] doing that." He declared that, because he had been denied Daly's assistance and felt unqualified to act on his own behalf, he intended to take no part in the trial proceedings and to object strenuously to appointed counsel's taking any action on his behalf.

In view of Taylor's objection to standby counsel's participation in the trial, the district court initially barred appointed counsel from cross-examining witnesses and required that any objections raised by counsel be registered at a bench conference outside the hearing of the jury. Gradually, however, as it became clear that Taylor would in fact take no part in the proceedings, the district court lifted the restrictions imposed on appointed counsel's participation. By the end of the trial, counsel was allowed to cross-examine witnesses and register objections freely at counsel's table, and to make a closing statement to the jury regarding the evidence presented by the Government.

Taylor was not inhibited in any way from conducting his own defense as he saw fit. Indeed, whenever he was invited to participate in the trial, he would simply reiterate his position that he was being denied his constitutional right to counsel of his choice and that he objected to appointed counsel's efforts on his behalf.

On appeal, Taylor again relies on *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), in support of his claim that the district court infringed his right of self-representation by appointing standby counsel and allowing him to participate in the trial over Taylor's objection.

We recognize that *Faretta* holds that an accused has a constitutional right to dispense with the assistance of counsel and to conduct his defense personally. It does not inevitably follow, however, that this right of self-representation comprehends any correlative right to preclude the trial court from appointing counsel and authorizing him to participate in the trial over the accused's objection in order to protect the public interest in the fairness and integrity of the proceedings.[2] Indeed, insofar as Taylor suggests that the mere appointment of standby counsel over his objection infringed his right of self-representation, his argument is frivolous in view of the Court's statement in *Faretta* that

> "a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." 422 U.S. at 835 n.46, 95 S.Ct. at 2541, citing *United States v. Dougherty*, 154 U.S.App.D.C. 76, 87–89, 473 F.2d 1113, 1124–26 (1972).

To be sure, it may be argued that, by expressly approving only the limited "standby" role noted above, the Court was implying that any action taken by appoint-

2. As Mr. Chief Justice Burger noted in *Mayberry v. Pennsylvania*, 400 U.S. 455, 467–68, 91 S.Ct. 499, 506, 27 L.Ed.2d 532 (1971) (concurring opinion),

> "When a defendant refuses counsel . . . or seeks to discharge him, a trial judge is well advised—as so many do—to have such 'standby counsel' to perform all the services a trained advocate would perform ordinarily by examination and cross-examination of witnesses, objecting to evidence and making closing argument. No circumstance that comes to mind allows an accused to interfere with the absolute right of a trial judge to

have such 'standby counsel' to protect the rights of accused persons 'foolishly trying to defend themselves,' as Mr. Justice Douglas so aptly described it. In every trial there is more at stake than just the interests of the accused; the integrity of the process warrants a trial judge's exercising his discretion to have counsel participate in the defense even when rejected. A criminal trial is not a private matter; the public interest is so great that the presence and participation of counsel, even when opposed by the accused, is warranted in order to vindicate the process itself."

ed counsel over the objection that counsel was interfering with the defense presented by the accused might well constitute an infringement of the accused's right of self-representation. However, even if we read the Court's statement as containing such a negative implication [3] and assume *arguendo* that the right of self-representation includes the right to preclude appointed counsel from interfering with the accused's presentation of his own defense, we would still conclude that Taylor's right of self-representation was not infringed in the circumstances of this case. The fact of the matter is that Taylor was allowed to present his own defense as he saw fit, and that appointed counsel's participation in the trial did not in any manner impinge upon or undercut the defense (if it may be called such) presented by Taylor. As the district court observed in its memorandum opinion denying Taylor's post-trial motions, his refusal to take part in the proceedings and objection to appointed counsel's participation was simply a protest over the court's refusal to allow Jerome Daly to represent him. We think the district court's observation is fully supported by the record, which makes clear that Taylor's objections to appointed counsel's efforts were not based on any substantive or tactical considerations but solely on the ground that counsel was not the man of Taylor's choice. Under the circumstances, it cannot be said that appointed counsel's participation in the trial interfered with Taylor's right to present his own defense personally, which the essence of the right to self-representation enunciated in *Faretta*.

Accordingly, we hold that, in the peculiar circumstances of this case, where the accused was not inhibited in any manner from presenting his own defense, openly acknowledged his inability to defend himself, and chose to take no part in the proceedings in protest over the district court's refusal to allow an unlicensed friend to represent him, the court did not infringe his right to self-representation by appointing standby counsel and authorizing counsel over the accused's objections to participate in the trial in a manner that did not interfere with the accused's presentation of his own defense.

### V.

Taylor next argues that the district court committed reversible error by informing the jury that Taylor had asked to be represented by a "disbarred attorney." According to Taylor, the district court's comment was a blatant effort to cast the defendant in a bad light before the jury and thus to prejudice their deliberations. We disagree.

Viewed in its context, the court's reference to the fact that Taylor had asked to be represented "by one Jerome Daly, who is not licensed to practice law and may in fact be a disbarred lawyer," was a timely and proper response to one of Taylor's periodic outbursts in which he complained that he was unfairly being denied the assistance of his friends in conducting his defense. In response, the court had every right to explain to the jury that Taylor had asked to be represented by unlicensed counsel, and that the rules of court did not allow for such representation. Under the circumstances, we do not believe that the court erred in referring to the possibility that Daly had been disbarred from the practice of law in the course of explaining to the jury the reasons why Daly had not been allowed to appear on behalf of Taylor. The record makes clear that no prejudice was intended, and we cannot conceive how any resulted from the court's remarks.

### VI.

Taylor finally argues that the court erred in refusing him permission to address the

---

**3.** In view of the *Faretta* Court's approving citation of *United States v. Dougherty*, 154 U.S. App.D.C. 76, 87–89, 473 F.2d 1113, 1124–26 (1972), it is not at all clear the Court meant that appointed counsel was constitutionally relegated to only a "standby" role. In *Dougherty*, after all, the District of Columbia Circuit had expressly approved of appointed counsel's serving both as a "standby" adviser to a pro se defendant and as a friend of the court authorized to act independently of the accused in order to protect his rights in the interests of justice. See 154 U.S.App.D.C. at 88 & nn.18–19, 473 F.2d at 1125 & nn.18–19.

jury to refute allegedly prejudicial statements contained in a local newspaper story printed in the course of the trial. The story, which recited various security measures taken for the Taylor trial, also included statements that Taylor "reportedly was arrested with some weapons in his possession" and "allegedly destroyed his patient records when he was indicted." Out of the presence of the jury, Taylor asked the court's permission to make a statement to the jury concerning the article. The court denied Taylor's request, as well as standby counsel's motion for a mistrial and request that the court determine if any of the jurors had read the article. Taylor, who had objected to standby counsel's motions, assigns as error on appeal only the district court's refusal to allow him to address the jury for the purpose of refuting the offensive statements.

■ We think the district court properly refused Taylor permission to address the jury for the purpose of refuting the prejudicial accusations contained in the newspaper story. Taylor's request was self-defeating, for any effort to refute the charges would necessarily have entailed revealing their substance to the jury. As it was, there was no reason to suppose that any of the jurors had read the article, for the court had on a number of occasions specifically instructed the jury not to read or listen to any references to the case that found their way into the media. Under the circumstances, to adopt Taylor's proposed "cure" would have been to guarantee infection with the very disease from which Taylor sought to deliver the jurors.

■ We find more troubling, however, the court's refusal to grant standby counsel's request that the court voir dire the jury to determine whether any of the jurors had in fact read or been exposed to the prejudicial article. We recognize that Taylor himself objected to counsel's request, and that the Government was about to put in evidence of Taylor's destruction of patient records. Nevertheless, the article's statement that Taylor was reportedly armed at the time of arrest, even if true, had no relevance to the issues at trial and had the potential for casting the defendant in a bad light before the jury. Accordingly, we think it would have been advisable to ask the jurors collectively whether any of them had seen any references to the trial in the paper, so that the court could satisfy itself that the jurors had not in fact been exposed to the story. See *Margoles v. United States*, 407 F.2d 727, 732–35 (7th Cir. 1969). Notwithstanding the above, we do not believe the court committed plain error affecting the substantial rights of the defendant by not inquiring whether any of the jurors had read the offensive article. The trial court, after all, had firmly and repeatedly admonished the jury during the course of the trial not to read or listen to any news coverage of the case, and the publicity involved here, although potentially damaging, did not make reference to any evidence strongly probative of the defendant's guilt that had been previously suppressed by the court as was the case in *United States v. Thomas*, 463 F.2d 1061, 1063 (7th Cir. 1972).

Accordingly, for the reasons noted above, the judgment of the district court is

AFFIRMED.