**UNITED STATES of America**

v.

**Len DAVIS, et al.**

**No. CRIM.A. 94–381.**

United States District Court, E.D. Louisiana.

Aug. 30, 2001.

Michael McMahon, Asst. U.S. Attorney, Gaynell Williams, Asst. U.S. Attorney, New Orleans, LA, for Plaintiffs.

Len Davis New Orleans, LA, Pro se.

Julian Murray, Metairie, LA, Carol Kolinchak, Orleans Parish Conflict Panel, Laurie White, Public Interest Counsel, New Orleans, LA, for Defendants.

## ORDER AND REASONS

BERRIGAN, District Judge.

The defendant, Len Davis ("Davis"), is representing himself *pro se*, with standby counsel to assist, in the penalty phase of this remanded capital case. He has consistently stated his intention to present no evidence in mitigation of the death penalty and invites the death penalty to be imposed. This Court previously

revoked Davis' self-representation and ordered his standby counsel to assume full representation and to prepare a full penalty phase defense. That decision was reversed by the Fifth Circuit Court of Appeals, which concluded that Davis had the right to represent himself, regardless of his intentions, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

The Court has considered the thoughtful memorandum filed by the Government in opposition to the appointment of independent counsel as well as Davis' consistent position adverse to mitigation evidence. The Court has also considered the memorandum filed by co-defendant Paul Hardy ("Hardy") in support of appointment of independent counsel.

The public has a substantial independent interest in being assured of a full and fair sentencing proceeding, in compliance with constitutional and statutory requirements, so that the death penalty is not imposed arbitrarily and capriciously. In order to accommodate this interest, the Court will appoint independent counsel to investigate and present mitigation evidence at the penalty phase. Counsel will be clearly identified as *not* representing Davis, and Davis will be permitted to present whatever defense he deems appropriate on his own behalf.[1]

*The Public Interest in a Full and Fair Sentencing Proceeding* [2]

The United States Supreme Court has stressed the "truly awesome responsibility" of a capital jury in "determining whether a specific human being should die at the hands of the State." *Caldwell v. Mississippi*, 472 U.S. 320, 329, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). The finality of the consequences requires factual accuracy and procedural fairness.

> Recognizing the unique seriousness of [capital sentencing] we have repeatedly emphasized that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action. For that reason, we have consistently required that capital proceedings be policed at all stages by an especially vigilant concern for procedural fairness and for the accuracy of factfinding.

*Strickland v. Washington*, 466 U.S. 668, 704, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (Brennan, J., concurring in part and dissenting in part) (internal citation and quotations omitted); *see also Monge v. California*, 524 U.S. 721, 731, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998).

The Supreme Court has frequently held that a pivotal requirement of a constitutionally sound death penalty system is individualized sentencing with jury consideration of mitigating factors about the offense and the offender.

> [A] sentencing system that allow[s] the jury to consider only aggravating cir-

---

**1.** The Court adopts all the reasons given in its previously issued Order and Reasons, May 16, 2001, and this Court's July 31, 2001 letter requesting reconsideration of that decision (attached as Appendix I), as justification here also for the appointment of independent counsel.

**2.** The Government suggests that it has the responsibility to "represent the public's interest in seeing that justice is done." Memoran- dum of Government at n. 1. Nevertheless, as Hardy points out, ours is an adversarial system with opposing sides. *See* Memorandum of Paul Hardy at 4. The Government is expected to "take a side." The independent counsel envisioned here is to protect the public interest in the fairness and integrity of the proceeding by assuring that the jury has *all* the information needed to make an informed decision.

cumstances would almost certainly fall short of providing the individualized sentencing determination that we ... have held ... to be required by the Eighth and Fourteenth Amendments.... A jury must be allowed to consider on the basis of all relevant evidence not only why a death sentence should be imposed, but also why it should not be imposed.

Thus, in order to meet the requirement of the Eighth and Fourteenth Amendments, a capital-sentencing system must allow the sentencing authority to consider mitigating circumstances.

*Jurek v. Texas,* 428 U.S. 262, 271, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *see also Eddings v. Oklahoma,* 455 U.S. 104, 112, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("[T]he sentencer in capital cases must be permitted to consider any relevant mitigating factor....").

Indeed, the Supreme Court has repeatedly emphasized that the requirement of individualized sentencing and the presentation of mitigating factors not only satisfies constitutional requirements but also fulfills fundamental values in our society.

If the sentencer is to make an individualized assessment of the appropriateness of the death penalty, evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse. Moreover, *Eddings* makes clear that it is not enough simply to allow the defendant to present mitigating evidence to the sentencer. The sentencer must also be able to consider and give effect to that evidence in imposing sentence. Only then can we be sure that the sentencer has treated the defendant as a uniquely individual human being[ ] and has made a reliable determination that death is the appropriate sentence. Thus, the sentence imposed at the penalty stage should reflect a reasoned *moral* response to the defendant's background, character, and crime.

*Penry v. Lynaugh,* 492 U.S. 302, 319, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (internal citations and quotations omitted) (emphasis in original).

A process that accords no significance to relevant facets of the character and record of the individual offender or the circumstances of the particular offense excludes from consideration in fixing the ultimate punishment of death the possibility of compassionate or mitigating factors stemming from the diverse frailties of humankind. It treats all persons convicted of a designated offense not as uniquely individual human beings, but as members of a faceless, undifferentiated mass to be subjected to the blind infliction of the penalty of death.

\*    \*    \*    \*    \*    \*

[W]e believe that in capital cases the fundamental respect for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death.

*Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (internal citations omitted). The law requires that "capital punishment be imposed fairly, and with reasonable consistency, or not at all." *Eddings,* 455 U.S. at 112, 102 S.Ct. 869.

*Appointment of Independent Counsel and the Faretta Right of Self–Representation*

    █ As a general proposition, the authority of a court to appoint independent

or amicus curiae counsel is broad and well-established.

A federal district court possesses the inherent authority to appoint an amicus curiae to assist the court in its proceedings. *United States v. Michigan,* 116 F.R.D. 655, 660 (W.D.Mich.1987); *cf. Morales v. Turman,* 820 F.2d 728, 731 (5th Cir.1987). The privilege of being heard amicus rests solely within the discretion of the court. *Leigh v. Engle,* 535 F.Supp. 418, 420 (N.D.Ill.1982); *accord U.S.F. & G. Co. v. Victory Land Co.,* 410 So.2d 359, 361 (La.App. 4th Cir.), *writ denied,* 412 So.2d 1113 (La.1982); *Parent–Community Alliance for Quality Education, Inc. v. Orleans Parish School Bd.,* 385 So.2d 33, 34 (La.App. 4th Cir.), *writ denied,* 386 So.2d 1379 (La.1980). Generally, courts have exercised great liberality in permitting an amicus curiae to file a brief in a pending case, and, with further permission of the court, to argue the case and introduce evidence. *Michigan,* 116 F.R.D. at 660—61; *cf. Morales,* 820 F.2d at 731. There are no strict prerequisites that must be established prior to qualifying for amicus status; an individual seeking to appear as amicus must merely make a showing that his participation is useful to or otherwise desirable by the court. *Leigh,* 535 F.Supp. at 420; *cf. New England Patriots Football Club, Inc. v. University of Colorado,* 592 F.2d 1196, 1198 n. 3 (1st Cir.1979). Absent a statute to the contrary, no distinction is made between the request of a private person for leave to appear amicus and one by an agent of the government. *Leigh,* 535 F.Supp. at 420; *see Braddy v. Southern Bell Tel. & Tel. Co.,* 458 F.2d 666, 668 (5th Cir.1972).

*United States v. Louisiana,* 751 F.Supp. 608, 620 (E.D.La.1990). *See also Morales v. Turman,* 820 F.2d 728 (5th Cir.1987); *Martinez v. Capital Cities/ABC–WPVI,* 909 F.Supp. 283, 286 (E.D.Pa.1995); *Liber-ty Lincoln Mercury, Inc. v. Ford Marketing Corp.,* 149 F.R.D. 65, 82 (D.N.J.1993); *Alexander v. Hall,* 64 F.R.D. 152, 155 (D.S.C.1974).

To this Court's knowledge, this is the first federal case where a capitally convicted defendant wishes to proceed *pro se* and present no evidence in mitigation of the death penalty. The Court is therefore unaware of any federal case dealing with the specific propriety of appointing independent counsel to develop and present that evidence in lieu of the defendant's anticipated refusal to do so. Nevertheless, the *Faretta* decision itself, and subsequent federal and state caselaw, has convinced this Court that such an appointment is both permissible and appropriate.

It is important to begin by noting that the *Faretta* case itself dealt with a criminal defendant whose request to represent himself was totally denied by the trial judge. Therefore, his entire defense was conducted by and through his attorney. The Supreme Court found this complete denial of self-representation to be an unconstitutional infringement on *Faretta's* Sixth Amendment rights. The Fifth Circuit has now ruled, based upon *Faretta,* that Davis is entitled to represent himself and present whatever defense he chooses. This Court, of course, will abide by that decision and allow Davis full rein in his penalty phase. He may voir dire jurors, make an opening statement, question witnesses, call witnesses, introduce evidence, make objections and present a closing argument, all as he desires to do or not do, within the appropriate procedural and evidentiary rules. The Court does not believe, however, that Davis' right of self-representation extends to silencing other potential voices in the courtroom. As the Fifth Circuit itself noted, the government will also be introducing evidence and it is "charged in this matter with seeking not the death

penalty but justice," a reminder to the government of its obligation to produce exculpatory or mitigation evidence to the fact finder. *United States v. Davis,* No. 01–30656, slip opinion at *7 (5th Cir. July 17, 2001). Likewise, this Court "may interpose questions to witnesses," presumably an invitation to the Court to elicit evidence that might otherwise not be presented. *Id.* An independent counsel, clearly identified as *not* associated with Davis, could likewise present evidence and question witnesses, providing relevant information helpful to the jury's decision. Just as the government's obligation to disclose mitigation evidence and the Court's prerogative to question witnesses do not interfere with Davis' *Faretta* right, neither would the participation of this independent counsel.[3]

In *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), the United States Supreme Court determined "what role standby counsel who is present at trial over the defendant's objection may play consistent with the protection of the defendant's *Faretta* rights." *Id.* at 170, 104 S.Ct. 944. As a preliminary but significant point, the *McKaskle* case involved *standby* counsel; counsel appointed to assist the defendant and who was clearly identified to the court and jury as aligned with the defendant, not *independent* counsel, unidentified with the defendant. *McKaskle* dealt also with the *trial* phase of a noncapital criminal case. In the situation currently facing this Court—the penalty phase of a capital case—compelling Eighth Amendment concerns, already discussed above, and simply not applicable in

the trial stage, must also be taken into consideration.

In *McKaskle,* the defendant requested to proceed *pro se;* the trial court acquiesced but appointed standby counsel to assist the defendant. Standby counsel then interjected himself into the proceedings, unsolicited by the defendant and over his continuing objection. According to the Fifth Circuit, which reversed the conviction on direct appeal, standby counsel "continuously participated in the proceedings, both in and outside the presence of the jury. In addition to making objections too numerous to cite, counsel on several occasions cursed, argued with defendant, and moved for mistrial against the defendant's wishes." *Wiggins v. Estelle,* 681 F.2d 266, 269—70 (5th Cir.1982). The Fifth Circuit reversed the conviction on the basis of *Faretta,* and declared the following:

> [T]he rule that we establish today is that court-appointed standby counsel is "to be seen, but not heard." By this we mean that he is not to compete with the defendant or supersede his defense. Rather, his presence is there for advisory purposes only to be used or not used as the defendant sees fit.

*Wiggins v. Estelle,* 681 F.2d at 273 (footnotes omitted).

The United States Supreme Court granted certiorari, quoted the above "rule," declared it unacceptable, reversing the Fifth Circuit and reinstating the conviction.

---

**3.** Appointing independent counsel would also avoid the conflict and confusion of adversarial roles if the prosecutor were required to present full mitigation as well as aggravation. It also avoids the appearance of partiality that would be created if the trial judge actively participated in calling witnesses.

The Government expresses concern that the appointed attorney will necessarily carry the "imprimatur of the court." Memorandum of Government at 8. The Court disagrees. While it is premature to decide what specifically the jury will be told, the Court envisions a simple explanation to the effect that "the law" calls for the participation of independent counsel.

The Supreme Court began its analysis by pointing out that *Faretta* was a case in which the criminal defendant was required to present his case "exclusively" through counsel. *McKaskle,* 465 U.S. at 174, 104 S.Ct. 944. Wiggins, on the other hand, was allowed to organize and control his own defense, "to make motions, argue points of law, participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial." *Id.* The Supreme Court therefore characterized Wiggins' complaint as directed not at restrictions placed on *his* participation, as there were none, but rather on the failure of the trial court to limit the participation of his standby counsel, which Wiggins claimed interfered with his *pro se* defense. The Supreme Court noted that "*Faretta* itself dealt with the defendant's affirmative right to participate, not with the limits on standby counsel's additional involvement." *Id.*[4] This Court believes that the distinction between allowing the defendant his affirmative voice but not necessarily silencing the voices of others is significant. While *McKaskle* dealt specifically with the role of standby counsel *for* a defendant, the Supreme Court discussed the possibility of *other* participants in the courtroom presenting evidence, *including an independently appointed amicus curiae counsel.* Significantly, the Court distinguished these as *not* being voices "for the defense." *Id.*

A *pro se* defendant must generally accept any unsolicited help or hindrance that may come from the judge who chooses to call and question witnesses, from the prosecutor who faithfully exercises his duty to present evidence favorable to the defense, from the plural voices speaking 'for the defense' in a trial or more than one defendant, or *from an amicus counsel appointed to assist the court.*

*Id.* at 177 n. 7, 104 S.Ct. 944 (emphasis added).

In support of the above, the *McKaskle* court cited Judge Burger's concurring opinion in *Brown v. United States,* 264 F.2d 363 (D.C.Cir.1959). Judge Burger argued that a court could assign counsel without the consent of the accused. He gave the following rationale:

It is axiomatic that more than the rights of an accused are involved in a criminal case. In some circumstances, for example, where an indictment covers such complex questions of law and fact that the court thinks the accused unable to understand their import, *an amicus curiae could properly be appointed without the accused's consent. The accused should, however, still be permitted to present his own case without reference to what is presented by the amicus curiae.* Vindication of the processes of justice would require such a procedure in some cases.

*Brown v. United States,* 264 F.2d at 369, *cited in McKaskle,* 465 U.S. at 177 n. 7, 104 S.Ct. 944 (emphasis added).

Later in the *McKaskle* decision, the Supreme Court noted that the *Faretta* court itself specifically relied upon another District of Columbia appellate decision, *Unit-*

---

4. The Supreme Court cited favorably the then-current American Bar Association, Standards for Criminal Justice, § 6–3.7 (2d ed.1980) which stated that standby counsel may "call the judge's attention to matters favorable to the accused upon which the judge should rule on his or her motion..." and Rule 711 of the Uniform Rules of Criminal Procedure to the same effect. *McKaskle,* 465 U.S. at 180 n. 10, 104 S.Ct. 944. The current version of Standard 6–3.7 states in part that the trial judge should ensure that standby counsel not actively participate in the defense unless requested by the accused "or directed to do so by the court."

ed States v. Dougherty, 473 F.2d 1113 (D.C.Cir.1972):

> In its footnote on standby counsel *Faretta* cited three pages of *Dougherty, supra,* in which we find this statement: "The utility of an *amicus* appointment is dependent on explanation to and cooperation by the defendant, and on understanding, too, that he may claim with some merit that his *pro se* rights include his right to appear before the jury in the status of one defending himself, and that this is defeated if a too conspicuous role is played by an attorney, *unless it clearly appears to the jury that he does not have the status of defense counsel."*

*McKaskle,* 465 U.S. at 178 n. 9, 104 S.Ct. 944 (citing *Dougherty,* 473 F.2d at 1125) (emphasis added).

Immediately after the passage from *Dougherty* quoted by the Supreme Court in *McKaskle* and cited in its *Faretta* opinion, the D.C. Circuit included the following footnote:

> There is a distinction in function between an amicus appointed to assist defendant and one appointed to assist the court. The latter may call witnesses and ask questions, without reference to the defendant, under the same authority that permits the judge himself to take such action in the interest of justice.

*United States v. Dougherty,* 473 F.2d at 1125 n. 18.

It appears clear to this Court that the Supreme Court in *McKaskle,* and arguably even in *Faretta* itself, has acknowledged the possibility and propriety of appointing independent counsel when a *pro se* litigant insists on representing himself. As long as the jury is made to understand that that independent counsel is *not* representing the defendant, then *Faretta* is not violated.

The Seventh Circuit dealt with the interaction of a *pro se* defendant with his standby counsel in a post-*Faretta* but pre-*McKaskle* decision. *See United States v.* *Taylor,* 569 F.2d 448 (7th Cir.1978). In that case, the defendant elected to proceed *pro se,* but the trial court appointed counsel to advise him and "charged him with the additional responsibility of seeing to it that all of the facts favorable to the defendant would be brought out at trial." *Id.* at 451. During the trial, the defendant was not restricted in any way from participating. He nonetheless maintained his objection to the participation by appointed counsel. The Seventh Circuit found no *Faretta* violation:

> We recognize that Faretta holds that an accused has a constitutional right to dispense with the assistance of counsel and to conduct his defense personally. It does not inevitably follow, however, that this right of self-representation comprehends any correlative right to preclude the trial court from *appointing counsel and authorizing him to participate in the trial over the accused's objection in order to protect the public interest in the fairness and integrity of the proceedings.* [FN2]

> FN2. As Mr. Chief Justice Burger noted in *Mayberry v. Pennsylvania,* 400 U.S. 455, 467—68, 91 S.Ct. 499, 506, 27 L.Ed.2d 532 (1971) (concurring opinion),

> "When a defendant refuses counsel ... or seeks to discharge him, a trial judge is well advised as so many do to have such 'standby counsel' to perform all the services a trained advocate would perform ordinarily by examination and cross-examination of witnesses, objecting to evidence and making closing argument. No circumstance that comes to mind allows an accused to interfere with the absolute right of a trial judge to have such 'standby counsel' to protect the rights of accused persons 'foolishly trying to defend themselves,' as Mr. Justice Douglas so aptly described it. In every trial there is more at stake than

just the interests of the accused; the integrity of the process warrants a trial judge's exercising his discretion to have counsel participate in the defense, even when rejected. A criminal trial is not a private matter; the public interest is so great that the presence and participation of counsel, even when opposed by the accused, is warranted in order to vindicate the process itself."

*United States v. Taylor,* 569 F.2d at 452 & n. 2 (emphasis added).

The *Taylor* court also noticed *Faretta*'s reliance on the *Dougherty* decision and anticipated the ultimate ruling of the Supreme Court in *McKaskle:*

In view of the *Faretta* Court's approving citation of *United States v. Dougherty,* 154 U.S.App. D.C. 76, 87—89, 473 F.2d 1113, 1124—26 (1972), it is not at all clear the Court meant that appointed counsel was constitutionally relegated to only a "standby" role. In *Dougherty,* after all, the District of Columbia Circuit had expressly approved of appointed counsel's serving both as a "standby" adviser to a pro se defendant and *as a friend of the court authorized to act independently of the accused in order to protect his rights in the interests of justice.* See 154 U.S.App. D.C. at 88 & nn. 18—19, 473 F.2d at 1125 & nn. 18—19.

569 F.2d at 453 n. 3 (internal citations omitted) (emphasis added).

The Uniform Rules of Criminal Procedure also anticipate standby counsel in *pro se* criminal cases assuming a substantial role:

Notwithstanding acceptance of a waiver (of counsel), the court may appoint standby counsel to assist when called upon by the defendant, to call the court's attention to matters favorable to the defendant upon which the court should rule on its own motion, and if it becomes necessary for a fair trial, to conduct the defense.

Uniform R.Crim. P. 711(c)

Again, it is important to be reminded that all of these above discussions occurred in the context of *Faretta*'s scope during *the trial stage.* The case before this court deals with the penalty phase of a capital case where compelling Eighth Amendment concerns are implicated, concerns not present during the trial stage. Also, while the *McKaskle* and *Taylor* decisions specifically concerned the role of standby counsel, the possibility of a court appointing independent amicus counsel was not only acknowledged but implicitly endorsed.

In its most recent pronouncement on *Faretta,* the Supreme Court held that it did not extend to the appellate stage of a criminal case, overruling several circuits to the contrary, including the Fifth. *See Martinez v. Court of Appeal of California,* 528 U.S. 152, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000). In so holding, the Court noted that *Faretta* itself recognized that the right to self-representation is not absolute. "Even at the trial level ... the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Id.* at 162, 120 S.Ct. 684.[5]

While no federal court has dealt with the specific issue of appointment of independent counsel in the penalty phase of a capital case, several state courts have. Just seven months ago, the Florida Supreme Court issued guidelines for trial judges in state capital cases on ways to deal with defendants who refuse to present available mitigation and argue for death.

---

**5.** The *Martinez* majority also acknowledged lower court and law journal commentary critical of the *Faretta* decision (and urging that it be revisited). *See* 528 U.S. at 161 n. 9–10, 120 S.Ct. 684.

*See Muhammad v. State,* 782 So.2d 343 (Fla.2001). In that state, the jury serves in an advisory capacity only, with the judge making the final decision as to the penalty. The Florida high court had the following suggestions:

> Having continued to struggle with how to ensure reliability, fairness, and uniformity in the imposition of the death penalty in these rare cases where the defendant waives mitigation, we have now concluded that the better policy will be to require the preparation of a PSI in every case where the defendant is not challenging the imposition of the death penalty and refuses to present mitigation evidence. To be meaningful, the PSI should be comprehensive and should include information such as previous mental health problems (including hospitalizations), school records, and relevant family background. In addition, the trial court could require the State to place in the record all evidence in its possession of a mitigating nature such as school records, military records, and medical records. Further, if the PSI and the accompanying records alert the trial court to the probability of significant mitigation, the trial court has the discretion to call persons with mitigating evidence as its own witnesses. This precise procedure has been suggested by the New Jersey Supreme Court in *State v. Koedatich,* 112 N.J. 225, 548 A.2d 939, 992 (1988), and recognized as appropriate by the Georgia Supreme Court in *Morrison v. State,* 258 Ga. 683, 373 S.E.2d 506, 509 (1988). *If the trial court prefers that counsel present mitigation rather than calling its own witnesses, the trial court possesses the discretion to appoint counsel to present the mitigation as was done in Klokoc v. State, 589 So.2d 219 (Fla.1991)* or to utilize standby counsel for this limited purpose.

782 So.2d at 363 (footnotes omitted) (emphasis added).

In his concurring opinion, Justice Pariente called for the appointment of independent counsel in every case where the defendant refuses to present mitigation, *Faretta* notwithstanding. This counsel's responsibility would be to present available mitigation to the advisory jury, the trial court and the Florida Supreme Court.

> This procedure, of course, would not prevent the defendant himself or herself from arguing in favor of the death penalty.
>
> Adoption of this procedure would serve to promote several important interests critical to the integrity of the process: (1) it would assist any advisory jury in making a more informed sentencing recommendation of either death or life and in fulfilling its statutory obligation to weigh mitigating and aggravating circumstances ...; (2) it would assist the trial court in making a more informed decision as to whether to impose the death sentence by ensuring that the court has before it the available mitigating evidence; and (3) it would facilitate this Court's constitutionally mandated obligation to review each death sentence for proportionality.
>
> I also believe that adoption of this procedure would serve the important additional goal of promoting finality when a sentence of death is imposed.

782 So.2d at 370—71 (Pariente, J., specially concurring).

As noted, the jury in Florida serves in an advisory capacity with the judge making the final determination. The judge can draw on sources unavailable to the jury, such as the now-mandated presentence investigation report. In a federal case, on the other hand, the jury makes the final determination and is limited to what is presented during the penalty phase itself. All the more reason, therefore, to assure that available mitigation evidence be pre-

sented there, as that is the only opportunity for it to be heard.

In an earlier Florida Supreme Court case, then Justice and now Judge Rosemary Barkett of the Eleventh Circuit endorsed appointment of independent amicus counsel for a condemned defendant who refused to present mitigation:

> How then can we accommodate society's need for the information necessary to make an informed judgment as well as a defendant's right to represent himself or remain silent? The compromise suggested by Hamblen's appellate counsel appears to be a sensible and viable solution in these rare cases. Hamblen's attorney does not suggest that his client be precluded from exercising his constitutional right to represent himself. Rather, he argues that separate public counsel be appointed to present the case for mitigation. I agree with this proposal. Reliability in imposing the death penalty, in my opinion, can be achieved only in the context of a true adversarial proceeding. Appointing independent public counsel to present whatever mitigating factors reasonably can be discovered under the circumstances of a given case would satisfy society's need for a reliable and proportionate sentence without infringing upon the defendant's right of self representation.

*Hamblen v. State*, 527 So.2d 800, 809 (Fla. 1988) (Barkett, J., dissenting as to penalty).

In *Klokoc v. State*, 589 So.2d 219 (Fla. 1991), the Florida Supreme Court noted that "Klokoc refused to allow his counsel active participation on his behalf in the penalty phase and refused to cooperate or allow counsel to present evidence by family members in mitigation. As a result, counsel moved to withdraw. That motion was denied by the court, but, in view of Klokoc's lack of cooperation with his counsel, the court appointed special counsel to rep-resent the public interest in bringing forth mitigating factors to be considered by the court in the sentencing proceeding." *Id.* at 220. Special counsel, representing the public interest, cross-examined the state's witnesses and, after Klokoc expressly prohibited *his* counsel from presenting any evidence, special counsel then presented both expert and lay witnesses in mitigation.

In *State v. Koedatich*, 112 N.J. 225, 548 A.2d 939 (1988), the defendant instructed his attorney to do nothing in the penalty phase of his capital trial; his attorney acquiesced and the defendant was sentenced to death. The New Jersey Supreme Court reversed the sentence due to an error in the jury instructions, but added the following with regard to trial counsel's failure to present mitigation:

> "Although counsel in this case fulfilled his obligations to his client, he failed to perform a role assigned to him by the state, that of presenting the mitigating evidence necessary to assure the reliability of the penalty determination. But the fact that the state assigns defense counsel a role which may require him to act contrary to his client's wishes on a matter of such vital importance to the client presents a troubling picture. The defense of a capital case often requires a close and trusting relationship between counsel and client; yet our decision requires counsel to violate that trust, to take a position against his client, and perhaps to present evidence revealed to him in confidence by his client.
>
> Trial courts should explore methods of alleviating this conflict. In some cases it might be desirable for counsel, in addition to presenting mitigating evidence, to inform the jury of defendant's personal position. In other cases, the court might permit the defendant himself to address the jury. Alternatively, the

court could call persons with mitigating evidence as its own witnesses, or *appoint new counsel to call them,* and thereby place on the record the mitigating evidence essential to a careful, balanced penalty determination.

In sum, both the state's need to assure the fairness and reliability of the penalty determination, and defendant's rights to personal choice and dignity, command respect. It is essential that the penalty trial constitute a balanced presentation of aggravating and mitigating evidence, but this goal should be achieved, as far as possible, with respect and accommodation for defendant's personal values and for his relationship with counsel."

548 A.2d at 996—97 (quoting *People v. Deere,* 41 Cal.3d 353, 222 Cal.Rptr. 13, 710 P.2d 925, 935 (1985) (Broussard, J., concurring)) (footnotes omitted) (emphasis added).

In *State v. Dodd,* 120 Wash.2d 1, 838 P.2d 86 (1992), the defendant, after consulting with counsel, chose not to present available mitigation evidence at the penalty phase of his trial and was sentenced to death. He then sought to waive general appellate review. His stated goal was to be executed. The specific issue in the case was whether a defendant could waive such review under state law and, if yes, whether Dodd's waiver was competent. In order to consider these issues fully, the Washington Supreme Court designated Dodd's trial counsel as amici curiae and then appointed new counsel to represent Dodd on the competency of his waiver. The amici curiae presented legal arguments against finding waiver permissible, which was contrary to the defendant's position. The high court concluded that under state law, a defendant could waive general appellate review but could not waive statutory sentence review. The court then considered the appropriateness of the sentence. The amici argued mitigating circumstances, again despite the fact that the defendant chose not to present such at the hearing. The majority found the sentence appropriate.

Finally, in addition to the above authorities, at least one law review commentator has found the appointment of independent counsel the most appropriate course of action when a capital defendant refuses to present mitigation. *See* Linda Carter, *Maintaining Systemic Integrity in Capital Cases: The Use of Court -Appointed Counsel to Present Mitigating Evidence when the Defendant Advocates Death,* 55 Tenn. L.Rev. 95 (1987).

*Conclusion*

Society has a strong and compelling interest in a full and fair capital sentencing proceeding, regardless of the individual circumstances of a particular case. This interest requires the presentation of both aggravating and mitigating factors to the jury that will be deciding life or death. Without that information, the jury cannot perform its statutory function and make an informed, reliable decision. In this instance, Davis wishes to abrogate those requirements because of a desire to receive the death penalty. While these safeguards are intended to protect an individual defendant from an arbitrary and capricious execution, they serve an equally, if not more, important purpose in protecting society from participating in an execution that is not warranted. The jurors are not "potted plants" to be left in the dark by a headstrong defendant with a personal agenda, but rather are the representatives of a civilized society with the "awesome responsibility" of expressing the values and standards of that society in the most serious and final of all decisions. The law has set forth what is required for them to perform their duties, statutorily and morally. "The public has an interest in the reliability and integrity of a death sentencing decision that transcends the prefer-

ences of individual defendants." *State v. Martini,* 144 N.J. 603, 677 A.2d 1106, 1107 (1996). This Court perceives itself as constitutionally obliged to "police" these proceedings with "an especially vigilant concern for procedural fairness and for the accuracy of factfinding." *Strickland,* 466 U.S. at 704, 104 S.Ct. 2052.

Therefore, IT IS ORDERED that attorney Laurie White is hereby appointed as independent counsel to represent the public interest in a full and fair penalty phase proceeding.

## APPENDIX I

July 31, 2001

Mr. Charles R. Fulbruge III, Clerk

United States Court of Appeals, Fifth Circuit

600   Camp Street

New Orleans, LA 70130

No. 01–30656 USA v. Davis

USDC No. 94–CR–381–1–C

Dear Mr. Fulbruge,

This letter is in response to an invitation from the panel in the above case to request the Court to reconsider its recent ruling, which granted a writ of mandamus and ordered that Len Davis be allowed to proceed pro se at the penalty phase of his case. I appreciate very much the opportunity to respond.

In urging reconsideration, I resubmit the reasons given in my original Order and Reasons and also the reasons given in the dissent by Judge Dennis. In addition, I offer the following points for the Court's further consideration.

1. *Distinction Between Trial and Sentencing:*

At the guilt phase of a trial, a defendant has the prerogative to plead guilty. *See* Fed.R.Crim.P. 11(a). Because he can choose to plead guilty, avoiding a trial altogether, he can likewise choose to represent himself and offer a defense (or not), or he can choose to defend and be represented by counsel. All of these choices are decisions reserved for him. They are "his call" to make. *Faretta* logically flows from this autonomy enjoyed by the pre-trial defendant.

Even though a defendant has the choice of whether or not to plead guilty, the trial judge still has an obligation to determine if there is a factual basis for his guilt. *See* Fed.R.Crim.P. 11(f). A trial court cannot enter a judgment resulting from a guilty plea without first independently satisfying itself that the plea is factually legitimate. *See United States v. Gearin,* 496 F.2d 691 (5th Cir.1974). The trial judge can gather this information from the defendant, the prosecution or some other source. If the factual information points to innocence or discloses an affirmative defense, the plea should be rejected. So even in this area, where the defendant's autonomy is unquestioned under *Faretta,* and even if he chooses to plead guilty, he cannot decree that the plea will be accepted, nor can he control what sources of information the trial judge draws upon to decide whether to accept the plea as factually sound.

Once convicted, whether by plea or by trial, the defendant does not get to choose his sentence. Under federal law, that is the prerogative of either the sentencing judge or, in a capital case, the jury. The autonomy a defendant enjoys in deciding whether to admit culpability or not ends with conviction and does not, and should not, intrude upon the autonomy of the sentencing authority to select an appropriate penalty. That is *not* the defendant's "call" to make. *Faretta*'s autonomy does not supplant the autonomy of the judge or jury.

Consequently, significantly more so than in the guilt phase, a defendant has no right to limit or control the information the sentencer receives to decide the penalty. This is particularly compelling in the penalty phase of a capital case, not only because the stakes are so high, but also because the jury's information is limited to that which is presented by the litigants themselves. Unlike the judge in a non-capital case, the jury cannot go outside the court record and investigate the background of a defendant on their own. In our adversarial system, the prosecution is to present the evidence justifying the death penalty and the defendant the evidence in mitigation. A defendant such as Mr. Davis, who orders the withholding of relevant mitigation evidence from the jury, undermines the factual basis for the sentence and creates the very real possibility of the death penalty being imposed when a fully informed jury would not have done so. Were Mr. Davis represented by counsel and counsel chose such a tactic, not only would counsel be incompetently representing his client, but arguably the trial court should step in and abort the proceeding until competent counsel is provided.

A defendant may "ask" to receive a particular sentence, but he cannot demand it. Nor should he be permitted to control and/or restrict what information is made available to the sentencing authority. *Faretta*'s autonomy should not carry that far.

2. *Obligation of Self–Represented Defendant to Comply with Rules of Procedural and Substantive Law:*

In the *Faretta* decision itself, the Supreme Court recognized that the right of self-representation is not unlimited. It is "not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Faretta v. California,* 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). As noted already above, a defendant has considerable freedom to fashion a theory of defense at the guilt stage of a trial, and can choose to forego it all and plead guilty. He is circumscribed largely only by procedural rules, such as the rules of evidence.

At the penalty phase of a death case, additional rules attach of a much more substantive nature. In order to be constitutional, the sentencing must be individualized, with attention paid to the background and character of the defendant as well as all circumstances of the offense. This is particularly true of evidence in mitigation that might cause a jury to *reject* the death penalty. *See Penry v. Lynaugh,* 492 U.S. 302, 327—28, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). A death penalty imposed is reliable only if it is reached after full consideration by the jury of any mitigating evidence relevant to the defendant's character, background or the offense. *See id.* Were a statute, the prosecutor or the court to withhold the evidence that Mr. Davis seeks to withhold, any resulting death penalty would be vacated and reversed as violating these substantive and procedural requirements.

Mr. Davis, by declaring that he intends to withhold evidence that is clearly pertinent to the jury's consideration, is refusing to comply with relevant rules of procedural and substantive law. In so doing, under *Faretta*'s own directive, he has forfeited any right he might have had to self-representation in this penalty phase.

It is worth noting that Mr. Davis' conduct has become obstreperous as well, which is an additional basis to forfeit any right he may otherwise have had to self-representation. Prior to this Court revoking his self-representation, Mr. Davis had on several occasions declared that he in-

tends to do nothing at all at the penalty phase: voir dire no jurors, give no opening or closing statement, question no witnesses and present none. His most recent threat in this regard occurred just last week when he stated in open court that if his penalty phase did not proceed as currently scheduled in August, he would no longer participate in the proceedings at all. These are not idle threats by Mr. Davis. At his first trial, he refused to cooperate with his attorneys in developing mitigation evidence and he refused to be physically present during the sentencing hearing. A defendant who claims self-representation but refuses to cooperate in the proceedings forfeits that self-representation. *See United States v. Brock,* 159 F.3d 1077 (7th Cir.1998); *United States v. Brown,* 791 F.2d 577 (7th Cir.1986). Mr. Davis has done so.

### 3. *Mandamus Standards:*

The pre-trial disqualification of counsel is not an appealable issue, except under very rare conditions not present here. *See Flanagan v. United States,* 465 U.S. 259, 267—68, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984) (noting that post-conviction review of a disqualification order is fully effective to the same extent as is review of a denial of self-representation). Since the revocation of Mr. Davis' self-representation is not immediately appealable as a matter of course, the writ of mandamus is available but only for exceptional circumstances. The standard is that Mr. Davis must show he lacks an adequate alternative means to obtain the relief that he seeks and that his right to what he seeks is "clear and indisputable." *In re American Airlines,* 972 F.2d 605, 608 (5th Cir.1992).

Turning first to whether an adequate alternative exists, Mr. Davis is arguably in a win-win-win situation with his self-representation revoked. Mr. Davis' stated reason for wanting to represent himself is not because of dissatisfaction with his attorneys, but rather because he wishes to receive the death penalty so that his legal attacks on his original conviction will be taken more seriously on appeal or in a post-conviction challenge. If his attorneys are successful in convincing the jury to spare Mr. Davis' life, he will still have his claimed appellate and post-conviction errors to raise attacking his conviction. If he is sentenced to death, he will have what he states he wishes for and likewise will still have his appellate and post-conviction claims to litigate. If he is sentenced to death and he decides, in hindsight, that he does not want that outcome and appeals the denial of self-representation, the appellate court may determine, based on all the facts available at that point, that his self-representation was improperly revoked and grant him a new penalty phase. It is difficult to see how Mr. Davis has been irretrievably prejudiced by the revocation of his self-representation at this juncture or that he has no adequate alternative remedy if this Court erred in that decision.

Furthermore, his right to self-representation under all the circumstances in this case is not "clear and indisputable." This Court has permitted Mr. Davis to represent himself, with the aid of standby counsel, since this case was returned from the appellate court last year. It is only under the current overall circumstances of this case that the Court decided in its discretion to revoke that self-representation. To this Court's knowledge, this is the first instance in a federal capital case where a defendant has asserted self-representation in order to withhold evidence in mitigation, to seek the death penalty and possibly not to participate in the penalty phase proceedings at all. This issue is *res nova* in the federal system and, it is respectfully

submitted, is not appropriate for a writ of mandamus.

Sincerely,

Ginger Berrigan